IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| STATE OF ALABAMA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| PCI GAMING AUTHORITY, BUFORD ) | |
| ROLIN, STEPHANIE BRYAN, ROBERT ) | CIVIL ACTION NO. |
| MCGHEE, DAVID GEHMAN, ARTHUR ) | 2:13-CV-00178-WKW-WC |
| MOTHERSHED, SANDY HOLLINGER, ) | |
| GARVIS SELLS, EDDIE TULLIS, KEITH ) | |
| MARTIN, BRIDGET WASDIN, MATTHEW ) | |
| MARTIN, BILLY SMITH, and TIM ) | |
| MANNING, ) | |
| ) | |
| Defendants. ) | |

## **TRIBAL DEFENDANTS' BRIEF IN SUPPORT OF MOTION TO DISMISS**

This case presents a knowing attempt by the State of Alabama to execute an end run around federal law and to disregard the sovereignty and jurisdictional authority of the Poarch Band of Creek Indians (PBCI), a federally recognized Indian tribe. On October 19, 2012, the Attorney General of Alabama explicitly and correctly conceded (in a letter to counsel for Victoryland) that federal law governs gaming activity on the PBCI trust lands at issue in this case. *See doc. 1, Ex. D,* Letter from Luther Strange, Attorney General of Alabama, to Joseph C. Espy, III (Oct. 19, 2012). In fact, he contrasted non-Indian gaming facilities, such as Victoryland – where Alabama law applies – with Indian gaming facilities – "where federal law governs," where "the State does not have jurisdiction," and where the Attorney General "do[es] not have jurisdiction to enforce either federal or Alabama law." *Id.* Nevertheless, just four months after making this concession, the Attorney General filed a state court action alleging that gaming activity on PBCI's trust lands constitutes a public nuisance under Alabama law that can

and should be enjoined by a state court applying state law. *See* Complaint. That action, having been removed by the Defendants, is now before this Court.

The Attorney General was correct in the first instance. The State of Alabama has no authority to regulate gaming in Indian Country, and it certainly has no authority to do so through the application of state law nuisance principles. The Plaintiff has failed to set forth any viable cause of action against the Defendants, who enjoy immunity from suit in any event. Accordingly, the Court should dismiss this case with prejudice.

### JURISDICTION TO ADDRESS THE TRIBAL DEFENDANTS' MOTION TO DISMISS

This Court has removal jurisdiction over this case under 28 U.S.C. §§ 1441 and 1442.[1] And while the general rule is that a district court must remand a removed action if it finds a lack of subject matter jurisdiction, that rule does not apply when the lack of subject matter jurisdiction is the result of a defendant's sovereign immunity. *See*, *e.g.*, *Contour Spa at the Hard Rock, Inc. v. Seminole Tribe of Fla.*, 692 F.3d 1200, 1208 (11th Cir. 2012) (recognizing a tribe's right to remove a case to federal court and then seek its dismissal on tribal sovereign immunity grounds); *Santana v. Muscogee (Creek) Nation*, 2013 WL 323223 (10th Cir. 2013) (affirming district court's tribal-sovereign-immunity-based dismissal of removed tort action against tribe); *Progressive Specialty Ins. Co. v. Hanson*, 2012 WL 5966638, at *1 (M.D. Ala. Nov. 28, 2012) (dismissing removed action against federal official on sovereign immunity grounds).

This is consistent with the "familiar law that a federal court always has jurisdiction to determine its own jurisdiction," or, as is the case here, its lack thereof. *United States v. Ruiz*, 536 U.S. 622, 628 (2002). The Defendants' enjoy tribal sovereign immunity from suit, and because

---

[1] "Section 1442 … provides not only a right of removal, but also an independent basis for federal jurisdiction." *Korman v. I.R.S.*, 2007 WL 1206742, at *3 (S.D. Fla. 2007) (citing *Magnin v. Teledyne Cont'l Motors*, 91 F.3d 1424, 1427 (11th Cir. 1996)).

"[s]overeign immunity is jurisdictional in nature," *F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994), this Court should dismiss the Complaint with prejudice for lack of subject matter jurisdiction.[2]

## BACKGROUND

PBCI is a federally recognized, sovereign Indian tribe eligible for special services and programs provided by the United States by virtue of PBCI and its members' status as Indians. *See* 77 Fed. Reg. 47868, 47871 (August 10, 2012) (listing federally recognized tribes).[3] Defendant PCI Gaming Authority (PCI Gaming) is a tribal enterprise wholly owned by PBCI that carries on Class II gaming at three sites within the exterior boundaries of the State of Alabama. *See* Compl. ¶¶ 5, 9.[4] All three of PBCI's gaming facilities are located on Indian lands held in trust by the United States for the benefit of PBCI. *See doc. 1, Ex. A*, Certified Copies of Deeds.[5] The named individual Defendants are members of the PBCI Tribal Council and/or

---

[2] Because the Defendants enjoy sovereign immunity, it necessarily follows that the state court from which this case was removed likewise lacked subject matter jurisdiction. The state court's lack of jurisdiction on sovereign immunity grounds does not preclude this Court from exercising removal jurisdiction under § 1441 to decide that it lacks subject matter jurisdiction on the same grounds. *See* 28 U.S.C. § 1441(f) ("Derivative removal jurisdiction.—The court to which a civil action is removed under this section is not precluded from hearing and determining any claim in such civil action because the State court from which such civil action is removed did not have jurisdiction over that claim."). Nor does it preclude this Court from jurisdiction under § 1442: "To hold otherwise would clearly defeat the underlying purposes of § 1442(a)(2) which are, to wit, make available the federal forum to certain property title holders … , while at the same time, ensure the general protection of the laws enacted by Congress, which federal judges are sworn to righteously interpret and uphold." *Benitez-Bithorn v. Rossello-Gonzalez*, 200 F. Supp. 2d 26, 33 (D.P.R. 2002).

[3] Although the complaint does not identify PBCI as a federally recognized Indian tribe, the Court can take judicial notice of this fact. *See United States v. Zepeda*, 705 F.3d 1052, 1064 (9th Cir. 2013).

[4] While the Defendants vehemently disagree with many of the factual allegations and characterizations set forth in the Plaintiff's complaint, they will cite it where possible for undisputed background facts.

[5] The federal ownership and trust status of the lands in question is a matter of public record and a critical factual element of this Court's subject matter jurisdiction. Accordingly, the Court may take judicial notice of those facts. *See*, *e.g.*, *Halmos v. Bomardier Aerospace Corp.*, 404 Fed. Appx. 376, 377 (11th Cir. 2010) (citing numerous cases for the proposition that "a district court may take judicial notice of matters of public record without converting a Rule 12(b)(6) motion into a Rule 56 motion"); *Iowa Tribe of Kan. & Neb. v. Salazar*, 607 F.3d 1225, 1229 n.1 (10th Cir. 2010) (taking judicial notice under Fed. R. Ev. 201(d) of deed placing lands into trust). Alternatively, the Court is entitled to consider the

directors of PCI Gaming, and they are all sued in their tribal official capacities.[6] *See* Compl. ¶¶ 6-7. While the State artfully avoids citing any federal law in its complaint – or even acknowledging or openly disputing the federal trust status of the lands in question – it necessarily argues that state law supersedes federal laws governing gaming on PBCI's trust lands and allows the injunction of federally sanctioned, PBCI-regulated gaming activity on those lands as a public nuisance. *See* Compl. ¶¶ 15-21.

## ARGUMENT AND ANALYSIS

This case comprises part of a concerted effort by the State of Alabama to usurp federal authority and impinge upon tribal sovereignty on lands that the United States holds in trust for the benefit of PBCI. This effort is unavailing.

First, the Defendants enjoy sovereign immunity. This Court thus lacks jurisdiction over the Plaintiff's claim, which should be dismissed with prejudice pursuant to Rule 12(b)(1).

Even if the Defendants did not enjoy sovereign immunity, however, the Court should still dismiss the complaint pursuant to Rule 12(b)(6) because it fails entirely to set forth a cause of action on which relief can be granted against the Defendants. To the extent that the complaint purports to set forth a state law public nuisance claim, that claim is preempted by federal law and must be dismissed. For all of these reasons, the Court should dismiss this case with prejudice pursuant to Rules 12(b)(1) and 12(b)(6).

---

trust status of the lands in question because it is a necessary element of the Defendants' sovereign immunity-based factual attack on the Court's jurisdiction. *See*, *e.g.*, *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990) (holding that a district court properly may consider matters outside of the pleadings when necessary to resolve a factual attack on its jurisdiction).

[6] Individual Defendant Bridget Wasdin is no longer a director of PCI Gaming.

**I.     The Defendants Enjoy Sovereign Immunity and the Court Lacks Jurisdiction over the Plaintiff's Claim.**

The Defendants are immune from suit, and this Court must dismiss the Plaintiff's claim against them for lack of jurisdiction. As the Eleventh Circuit has recently and repeatedly recognized, "it is … clear that 'as a matter of federal law, an Indian tribe is subject to suit only where Congress has authorized the suit or the tribe has waived its immunity.'" *Contour Spa at the Hard Rock*, 692 F.3d at 1203–04 (alteration omitted) (quoting *Kiowa Tribe of Okla. v. Mfg. Techs., Inc.*, 523 U.S. 751, 754 (1998)); *Furry v. Miccosukee Tribe of Indians of Fla.*, 685 F.3d 1224, 1226 (11th Cir. 2012). It is also settled law that PBCI is an Indian tribe that enjoys sovereign immunity absent a tribal waiver or congressional abrogation. *See Freemanville Water Sys., Inc. v. Poarch Band of Creek Indians*, 563 F.3d 1205 (11th Cir. 2009) (affirming district court's dismissal of claims against PBCI and PCI Gaming on the grounds that their sovereign immunity deprived the district court of jurisdiction); *Hardy v. IGT*, Inc., 2011 U.S. Dist. LEXIS 90852 (M.D. Ala. Aug. 15, 2011) (Watkins, J.) (dismissing gaming case against machine manufacturers and noting that PBCI "enjoys sovereign immunity and therefore cannot be joined"). Sovereign immunity bars not only claims for monetary relief, but also actions seeking declaratory and injunctive relief. *See Florida v. Seminole Tribe of Fla.*, 181 F.3d 1237, 1244–45 (11th Cir. 1999); *accord Freemanville*, 563 F.3d at 1208 ("Tribal sovereign immunity, where it applies, bars actions against tribes regardless of the type of relief sought.").

Tribal sovereign immunity applies not only to the tribe itself, but also to tribal enterprises, such as Defendant PCI Gaming, that are owned by, and act as an arm or instrumentality of, the tribe. *See*, *e.g.*, *Miller v. Wright*, 705 F.3d 919, 923–24 (9th Cir. 2013) ("The settled law of our circuit is that tribal corporations acting as an arm of the tribe enjoy the same sovereign immunity accorded to the tribe itself." (quotation and alteration omitted));

5

*Freemanville*, 563 F.3d at 1207 n.1; *Sanderford v. Creek Casino Montgomery*, 2013 WL 131432 at *2 (M.D. Ala. Jan. 10, 2013) ("Defendant Creek Casino is indistinguishable from the Tribe for the purposes of tribal sovereign immunity.") (Watkins, J.); *Allman v. Creek Casino Wetumpka*, 2011 WL 2313706 at *2 (M.D. Ala. May 23, 2011) (holding that PBCI's sovereign immunity extended to one of the Tribe's gaming facilities). And tribal officials such as the individual Defendants likewise are protected by their tribe's sovereign immunity when acting in their official capacities and within the scope of their authority. *See Tamiami Partners, Ltd. v. Miccosukee Tribe of Indians of Fla.*, 177 F.3d 1212, 1226 (11th Cir. 1999); *Terry v. Smith*, 2011 U.S. Dist. Lexis 122160, *20–21 (S.D. Ala. July 19, 2011), *adopted by, claim dismissed by* 2011 U.S. Dist. Lexis 119791 (S.D. Ala. Oct. 14, 2011) ("The Tribe's sovereign immunity extends to its governmental personnel (i.e., tribal officials such as tribal council members and the tribal police chief). … Consequently, even if plaintiffs could state a claim, any such claim is barred by the Tribal Officials' sovereign immunity….").

The Plaintiff does not allege that the Defendants have waived their sovereign immunity in this case, nor does it contend that Congress has abrogated the Defendants' immunity. Additionally, the Plaintiff concedes that the individual Defendants are being sued for actions undertaken in their official capacities. *See* Compl. ¶¶ 6-7. And it is clear as a matter of federal law that the conduct and regulation of gaming activity on Indian lands is within the scope of tribal officials' authority. *See* 25 U.S.C. § 2701(5) ("Indian tribes have the exclusive right to regulate gaming activity on Indian lands if the gaming activity is not prohibited by federal law and is conducted within a State which does not … prohibit such gaming activity."); *doc. 1, Ex. B*, Letter from Eric Shepard, NIGC Acting General Counsel, to Luther Strange, Attorney General of Alabama (March 14, 2013) ("The Poarch Band is a federally recognized Indian tribe, it operates

its gaming on 'Indian lands' as defined by the Act, and Alabama permits the play of bingo. Since IGRA [the Indian Gaming Regulatory Act] preempts Alabama's laws regarding gaming, the Poarch Band may operate bingo, as defined by IGRA, on its Indian lands …."). Accordingly, both PCI Gaming and the individual Defendants are entitled to sovereign immunity, and the Plaintiff's claim must be dismissed for lack of jurisdiction.

The Plaintiff may argue that it can maintain its action against the individual Defendants by contending that they acted outside the scope of their authority. But the complaint does not allege that the individual Defendants have acted outside the scope of their federally-recognized authority; rather, it alleges only that gaming activity conducted on PBCI's trust lands violates Alabama law. Even if the complaint could be construed as alleging that the individual Defendants exceeded their authority, a mere allegation that an official has acted outside the scope of his authority is insufficient to overcome sovereign immunity. *See*, *e.g.*, *Smith v. Babbitt*, 875 F. Supp. 1353, 1363 (D. Minn. 1995) ("[T]he mere allegation that tribal officials violated IGRA does not by itself strip them of sovereign immunity."); *Contour Spa at the Hard Rock, Inc. v. Seminole Tribe of Fla.*, 2011 WL 1303163, at *11 (S.D. Fla. March 31, 2011) (rejecting the argument that a mere allegation that a tribal official exceeded his authority was sufficient to overcome sovereign immunity where there was no evidence that the official violated an applicable federal law); *Miller v. Wright*, 2011 WL 4712245, at *4 (W.D. Wash. Oct. 6, 2011), *aff'd* 705 F.3d 919 (9th Cir. 2013) (dismissing, on immunity grounds, a case alleging that tribal officials exceeded the scope of their federally-recognized authority to impose and collect taxes). The individual Defendants enjoy sovereign immunity.

## II. The Plaintiff Fails to State Any Claim upon Which Relief Can Be Granted against the Defendants.

Even if the Defendants were not entitled to sovereign immunity, the Plaintiff's action still should be dismissed under Rule 12(b)(6) because it fails to state any claim upon which relief can be granted against the Defendants, regardless of the basis for this Court's jurisdiction upon removal. The Plaintiff's state law nuisance claim is preempted by federal law – the federal Indian Gaming Regulatory Act, which Congress "'intended to expressly preempt the field in the governance of gaming activities on Indian lands.'" *Tamiami Partners, Ltd. By & Through Tamiami Dev. Corp. v. Miccosukee Tribe of Indians of Florida*, 63 F.3d 1030, 1033 (11th Cir. 1995) (quoting S. Rep. 100-446, 6 (1988), *reprinted in* 1988 U.S.C.C.A.N. 3071, 3076).

### A. The State's complaint fails to state a claim under IGRA against these Defendants.

If this Court finds that it has removal jurisdiction over this case on the basis of complete preemption by IGRA – that is, that "IGRA has the requisite extraordinary preemptive force necessary to satisfy the complete preemption exception to the well-pleaded complaint rule," *Gaming Corp. of Am. v. Dorsey & Whitney*, 88 F.3d 536, 547 (8th Cir. 1996) – then the State's public nuisance claim must be properly "recharacterized" as a claim under IGRA. *See* 14B Wright & Miller, Fed. Prac. & Proc. Juris., § 3722.2 (4th ed.); *see also Engelhardt v. Paul Revere Life Ins. Co.*, 139 F.3d 1346, 1354 (11th Cir. 1998) (indicating that a plaintiff's completely-preempted state law claim must be recharacterized as an ERISA claim). The State's resulting IGRA claim, however, must nevertheless be dismissed as to these Defendants for failure to state a viable cause of action. *See, e.g.*, 25 U.S.C. § 2710(d)(7)(A)(ii) (permitting states to bring suit against the National Indian Gaming Commission to enjoin unauthorized Class III gaming, not against tribal defendants); *see also Florida v. Seminole Tribe of Fla.*, 181 F.3d 1237, 1245–49 (11th Cir. 1999).

B.  **Alternatively, the State's complaint must be dismissed because any attempt by the State to regulate gaming activity on Indian lands is preempted by Congress' unambiguous intention for IGRA to entirely displace state law.**

If this Court concludes that it has removal jurisdiction under any of the grounds enumerated in the notice of removal other than complete preemption by IGRA, the State's action still must be dismissed under Rule 12(b)(6) because Congress has left no room for the States to regulate gaming activities occurring on Indian lands. Unlike the doctrine of complete preemption for removal jurisdiction, "ordinary preemption operates to dismiss state claims on the merits and may be invoked in either federal or state court" as a complete affirmative defense.[7] Here, dismissal is required because even if IGRA does not completely preempt state law (for jurisdictional purposes), IGRA entirely preempts the field of Indian gaming.

The United States has completely occupied the field of Indian gaming through IGRA, which recognizes Indian tribes' "exclusive right to regulate gaming activity on Indian lands …." 25 U.S.C. § 2701(5). *See also* 25 C.F.R. § 501.2(c) ("Class II gaming on Indian lands shall

---

[7] *Lamm v. Bekins Van Lines Co.*, 139 F. Supp. 2d 1300, 1304 (M.D. Ala. 2001) (quotation omitted).

> As Judge Thompson has explained:
>
> Complete preemption is importantly distinct from the ordinary preemption of state law by federal law although, as the Eleventh Circuit has observed, the two categories of preemption have often been conflated: "[U]se of the term 'preemption' in this context has caused a substantial amount of confusion between the complete preemption doctrine and the broader and more familiar doctrine of ordinary preemption. For that reason, it is worth pointing out that: complete preemption functions as a narrowly drawn means of assessing federal removal jurisdiction, while ordinary preemption operates to dismiss state claims on the merits and may be invoked in either federal or state court."
>
> . . .
>
> However, complete preemption is unlike ordinary preemption in that the ultimate intent inquiry for the former is not the choice-of-law question of whether a particular federal law is designed to trump state law but rather the forum-selection question of whether Congress intended to establish federal-question removal jurisdiction for claims that appear from the plaintiff's complaint to be rooted only in state law and thus otherwise subject to the well-pleaded complaint rule.
>
> *Id.* at 1304–05 (citations omitted).

continue to be within the jurisdiction of an Indian tribe, but shall be subject to the provisions of [IGRA] and this chapter."); 25 C.F.R. § 542.5 ("Nothing in this part shall be construed to grant to a state jurisdiction in class II gaming …."). The Eleventh Circuit has recognized that:

> IGRA "is intended to expressly preempt the field in the governance of gaming activities on Indian lands. … [U]nless a tribe affirmatively elects to have State laws and State jurisdiction extend to tribal lands, the Congress will not unilaterally impose *or allow* State jurisdiction on Indian lands for the regulation of Indian gaming activities."

*Tamiami Partners, Ltd.*, 63 F.3d at 1033 (emphasis added). *See also Gaming Corp. of Am.*, 88 F.3d at 544–50 (holding that IGRA left no room for states to regulate or apply state law in any way that "would interfere with the [tribe's] ability to govern gaming"). PBCI has not consented to any state regulation of gaming on its trust lands, and the Plaintiff does not allege to the contrary.

In its Complaint, the State requests an order from this Court "declaring that the gambling activities being conducted by or through the Defendants is a public nuisance" under state law. *See* Compl.  Thus, in order to resolve the State's claim, this Court must necessarily determine whether state law may be applied to the Defendants' gaming activities on tribal trust lands — a paradigmatic example of just the sort of state-law claim that Congress "unequivocally … intended to expressly preempt [by occupying] the field in the governance of gaming activities on Indian lands." *Tamiami Partners*, 63 F.3d at 1033 (quotation omitted).  Because the State is clearly attempting to regulate gaming activity on Indian lands, the Plaintiff's state law public nuisance claim is preempted by IGRA, and the Complaint must be dismissed for its failure to state a claim against the tribal Defendants.

## CONCLUSION

The State's effort to circumvent federal law and tribal sovereign immunity by attempting to use state law nuisance principles to regulate gaming activity on PBCI's trust lands is wholly

without merit. Federal courts have made it exceedingly clear that Indian tribes, as well as their tribal enterprises and officials, enjoy sovereign immunity against exactly this sort of litigation. Additionally, Congress has firmly established that the regulation of gaming activity on Indian trust lands is, with certain exceptions not applicable here, exclusively within the purview of Indian tribes and the NIGC. Accordingly, the State's effort to regulate such activity by suing a tribal enterprise and tribal officials for an alleged violation of state law must be rejected, and the State's action should be dismissed with prejudice.

Respectfully submitted this 28th day of March, 2013.

*s/Kelly F. Pate*
One of the Attorneys for Defendants

**OF COUNSEL:**

Robin G. Laurie (ASB-4216-U64R)
rlaurie@balch.com
Kelly F. Pate (ASB-5289-L63F)
kpate@balch.com
**Balch & Bingham LLP**
Post Office Box 78
Montgomery, AL 36101-0078
Telephone: (334) 834-6500
Facsimile: (334) 269-3115

Keith M. Harper (*admitted pro hac vice*)
kharper@kilpatricktownsend.com
**Kilpatrick Townsend & Stockton LLP**
607 14th Street, NW, Suite 900
Washington, D.C. 20005-2018
Telephone: (202) 508-5844
Facsimile: (202) 508-5858

Mark H. Reeves (*admitted pro hac vice*)
mreeves@kilpatricktownsend.com
**Kilpatrick Townsend & Stockton LLP**
699 Broad Street, Suite 1400
Augusta, GA 30901-1453
Telephone: (706) 823-4206
Facsimile: (706) 828-4488

## **CERTIFICATE OF SERVICE**

  I hereby certify that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system and service will be perfected upon the following this the 28th day of March, 2013:

Andrew L. Brasher
Henry S. Reagan III
Office of the Attorney General
501 Washington Avenue
Post Office Box 300152
Montgomery, AL 36130-0152

                *s/Kelly F. Pate*
                OF COUNSEL