IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALBAMA
NORTHERN DIVISION

| | |
|---|---|
| STATE OF ALABAMA ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| ) | |
| PCI GAMING AUTHORITY, ) | |
| BUFORD ROLIN, STEPHANIE BRYAN, ) | Civil Action No. |
| ROBERT MCGHEE, DAVID GEHMAN, ) | 2:13-CV-00178-WKW-WC |
| ARTHUR MOTHERSHED, ) | |
| SANDY HOLLINGER, GARVIS SELLS, ) | |
| EDDIE TULLIS, KEITH MARTIN, ) | |
| BRIDGET WASDIN, ) | |
| MATTHEW MARTIN, BILLY SMITH, ) | |
| TIM MANNING, ) | |
| ) | |
| ) | |
| Defendants. ) | |

## FIRST AMENDED COMPLAINT

COMES NOW, the State of Alabama, by and through Attorney General Luther Strange via the undersigned counsel, and respectfully moves this Honorable Court for declaratory and injunctive relief to abate a public nuisance of unlawful gambling, pursuant to Ala. Code § 6-5-120 based on the following :

### JURISDICTION

1. Defendants removed this case on the grounds that this Court has subject matter jurisdiction under 28 U.S.C. § 1331.

2. This Court has jurisdiction over the parties.

3. Defendants have no tribal or sovereign immunity that would bar the declaratory and injunctive relief requested in this Complaint. As explained in more detail below, by openly and notoriously operating their casinos in violation of state law, Defendants have exceeded any purported authority they may have to conduct gambling under state or federal law.

## PARTIES

4. Plaintiff is the State of Alabama by and through Attorney General Luther Strange, who has standing to bring this action on behalf of the State. *See* Ala. Code § 36-15-12.

5. Defendant PCI Gaming Authority is a commercial enterprise owned and operated by the Poarch Band of Creek Indians ("PBCI").

6. Defendants Buford Rolin, Stephanie Bryan, Robert McGhee, David Gehman, Arthur Mothershed, Keith Martin, Sandy Hollinger, Garvin Sells, and Eddie Tullis are members of the PBCI Tribal Council and officials of PBCI sued in their official capacity.

7. Defendants Keith Martin, Bridget Wasdin, Matthew Martin, Billy Smith and Tim Manning are members of the PCI Gaming Authority and tribal officials sued in their official capacity.

## VENUE

8. Venue is appropriate in this Court. This action was filed in state court in Elmore County, Alabama, and removed to this Court by Defendants. Elmore County is within the Middle District of Alabama.

## GENERAL ALLEGATIONS

9. Defendants operate, administer, and control three casinos on purported Indian lands in Alabama: the Creek Casino in Wetumpka, the Wind Creek Casino in Atmore, and the

Creek Casino in Montgomery. At each of these casinos, Defendants operate hundreds of slot machines and other gambling devices in open, continuous, and notorious use.

10. Gambling is generally illegal in Alabama, and slot machines are particularly so. The State's general prohibition on gambling is so fundamental that the People enshrined it in the Constitution. *See* ALA. CONST. art. IV, §65. The Legislature has specifically criminalized possession of slot machines and other gambling devices. ALA. CODE §13A-12-27. Nevertheless, because of the immense profits associated with organized gambling, the industry frequently has tried to "evade[]" these prohibitions, as the Alabama Supreme Court put it in *Barber v. Jefferson Cnty. Racing Ass'n*, 960 So. 2d 599 (Ala. 2006), by asserting that "loophole[s]" in Alabama law were much larger than they in fact were. *Id.* at 614. For example, in 2006, the Alabama Supreme Court rejected the industry's attempt to pass off what were really slot machines as machines that were playing a legal "sweepstakes." *Id.* at 603-15. The Alabama Supreme Court held that substance is more important than legal technicality; accordingly, gambling devices are illegal if they "look like, sound like, and attract the same class of customers as conventional slot machines." *Id.* at 616. *See also Ex parte State*, No. 1120498, __ So. 3d ___, 2013 WL 765747 (Ala. Mar. 1, 2013); *Barber v. Cornerstone Comm. Outreach,* 42 So. 3d 65 (Ala. 2009); *State ex rel. Tyson v. Ted's Game Enterprises*, 893 So. 2d 376, 380 (Ala. 2004).

11. Gambling on "Indian Lands" is governed by the Indian Gaming Regulatory Act ("IGRA"). By enacting IGRA, Congress intended that Indian tribes be able to conduct gambling only "within a State which does not, as a matter of criminal law and public policy, prohibit such gaming activity." 25 U.S.C. § 1701(5). Accordingly, IGRA expressly provides that, "for purposes of Federal law, all State laws pertaining to the licensing, regulation, or prohibition of gambling, including but not limited to criminal sanctions applicable thereto, shall apply in Indian

3

country in the same manner and to the same extent as such laws apply elsewhere in the State." 18 U.S.C. § 1166(a).

12. IGRA also expressly distinguishes between "technological aids" that may be used with class II games like bingo without a State's consent, and class III games such as "slot machines," which cannot be operated without a State's consent. IGRA expressly provides that "'class II gaming' does not include . . . electronic or electromechanical facsimiles of any game of chance or slot machines *of any kind*." 25 U.S.C. § 2703(7)(b)(2) (emphasis added). Nonetheless, slot machine manufacturers and Indian tribes have gone to great lengths to conflate Class III slot machines with "technological aids" used to play the game of bingo. By 2006, the National Indian Gaming Commission admitted "that the industry is dangerously close to obscuring the line between Class II and III" altogether. *See* Proposed Rule, 25 CFR Part 502 and 546, Classification Standards, Class II Gaming, Bingo, Lotto, et al., 71 Fed. Reg. 30238 (May 25, 2006).

13. Defendants' gambling devices play like acknowledged slot machines and facsimiles of games of chance. Someone who wants to play one of Defendants' gambling devices can insert money directly into the face of the machine or load money onto a swipe card that the player inserts into the machine. The player then presses a button to bet a certain amount of money. Once the bet is in, the player presses a button or pulls a slot-machine arm or handle to start the spinning of slot reels that appear on the gambling devices. For some machines, the slot reels are digital; for others, the slot reels are mechanical. Approximately six seconds later, the machine displays the game's result. If the customer wins, then his or her credits go up; if not, the credits go down. The player can then either play again or cash out to receive credit for any money he or she has remaining.

14. All it takes to operate some of the gambling devices at Defendants' casinos is a single touch of a button or pull of a handle. With a single touch or pull, the machines both initiate a game and bring that game to conclusion. On information and belief, other of Defendants' gambling devices require two actions by the player: one touch or pull to initiate the spinning slot reels and a second touch or pull to stop the spinning slot reels.

15. Defendants' devices display a small "bingo card" to the side, below, or above the slot reels. On most of the machines, the "bingo" display is 1.5 inches by 1.5 inches. The predominant display on all Defendants' gambling devices is a large, digital or mechanical representation of "reels" commonly seen on acknowledged slot machines.

16. Defendants' gambling devices replicate a game of chance in an electronic format. There is no interaction between players. There is no competition to be the first person who covers a bingo card. No player must call out "bingo." There is no holder of a bingo card who covers randomly drawn numbers on the card. No player can "sleep a bingo" or forfeit a prize based on his or her failure to recognize a predetermined winning pattern. The player does not need to pay attention, listen to alphanumeric designations drawn one-by-one, or match them up to a bingo card. Instead, the player presses a single button, watches slot-machine reels spin, and is told whether he or she has won by the gambling device.

17. Some of Defendants' gambling devices are operated as acknowledged slot machines in other jurisdictions. For example, on information and belief, "Red Hot Fusion," "Quick Hit," "Hot Shot Blazing 7s," and "Wheel of Fortune" are openly, notoriously, and continuously played at Defendants' casinos. These games are marketed as both "bingo" and acknowledged slot machines. Publicly available marketing materials for "Red Hot Fusion,"

"Quick Hit," "Hot Shot Blazing 7s," and "Wheel of Fortune" are attached as **Exhibit A** to this Amended Complaint.

18. Defendants' gambling devices play like, look like, sound like, and attract the same class of customers as acknowledged slot machines. Attached as **Exhibit B** to this Amended Complaint are publicly available photographs of some of the gambling devices in open, continuous, and notorious use in Defendants' casinos.

### COUNT I – PUBLIC NUISANCE UNDER STATE LAW

19. The State incorporates paragraphs 1 through 18 as if fully stated in Count I.

20. Devices being used at Defendants' casinos do not play the game "commonly known as bingo" as defined by Alabama law. *See Barber v. Cornerstone Comm. Outreach,* 42 So. 3d 65 (Ala. 2009).

21. Devices being used at Defendants' casinos are prohibited gambling devices, as defined in Alabama Code § 13A-12-20(5). They are machines or equipment used in the playing phases of gambling activity between persons or machines. *Id.*

22. Devices being used at Defendants' casinos are slot machines or readily convertible to slot machines, as defined in Alabama Code § 13A-12-20(10). As a result of the insertion of an object, Defendants' devices operate with the aid of a physical act by the player to eject something of value based on the element of chance.

23. Defendants do not have legal authority to operate, advance, or profit from unlawful gambling activity in violation of Article IV, Section 65 of the Alabama Constitution (1901) and Ala. Code § 13A-12-20 *et seq*.

24. Defendants have an obligation to comply with Alabama's gambling laws for at least two reasons. First, federal law does not authorize Defendants to engage in "class III"

gambling or otherwise use "electronic or electromechanical facsimiles of any game of chance *or slot machines of any kind*." 25 U.S.C. § 2703(7)(B) (emphasis added). Instead, as to this kind of gambling, "for purposes of Federal law, all State laws pertaining to the licensing, regulation, or prohibition of gambling, including but not limited to criminal sanctions applicable thereto, shall apply in Indian country in the same manner and to the same extent as such laws apply elsewhere in the State." 18 U.S.C. § 1166(a) & (c). The term "'all State laws' includes both state statutory and case law." *United States v. Santee Sioux Tribe*, 135 F.3d 558, 565 (8th Cir. 1998).

25.     Second, on information and belief, Defendants' casinos are not located on properly recognized "Indian Lands" such that they would even be governed by IGRA. The Indian Reorganization Act of 1934 ("IRA") allows the Interior Department's Bureau of Indian Affairs to take land into trust for Native Americans. But the U.S. Supreme Court in *Carcieri v. Salazar*, 555 U.S. 379 (2009), has ruled that the Secretary of Interior has never been authorized to take land into trust for Indian tribes that were not "under federal jurisdiction" and recognized prior to 1934. Upon information and belief, PBCI was not under federal jurisdiction and recognized prior to 1934.

26.     The continued operation of slot machines and unlawful gambling devices by Defendants is a public nuisance. *See* Ala. Code § 6-5-120 *et seq.*; Restatement (Second) of Torts § 821B; *Try-Me Bottling Company, et al v. State of Alabama*, 178 So.231 (Ala. 1938).

27.     The continued operation of slot machines and unlawful gambling devices by Defendants works hurt, inconvenience, or damage to the public interest.

28.     The public policy of Alabama is emphatically against lotteries or any scheme in the nature of a lottery.

29.     The State has an interest in the welfare of the people within her domain and, of consequence, in enforcement of the State's declared public policy against lotteries or gift schemes.

30.     Defendants' operation of lotteries and their use of slot machines and unlawful gambling devices are enjoinable in suit by the State by virtue of this Court's equity jurisdiction to abate a public nuisance. *See Try-Me Bottling Company, et al v. State of Alabama*, 178 So. 231 (Ala. 1938).

## COUNT II – PUBLIC NUISANCE UNDER FEDERAL LAW

31.     The State incorporates paragraphs 1 through 30 as if fully stated in Count II.

32.     Defendants' activities constitute a public nuisance under Alabama law.

33.     Alabama statutes and judicial precedents, such as Article IV, Section 65 of the Alabama Constitution (1901), Ala. Code § 13A-12-20 *et seq*, and *Try-Me Bottling Company, et al v. State of Alabama*, 178 So. 231 (Ala. 1938), are "State laws pertaining to the licensing, regulation, or prohibition of gambling." 18 U.S.C. § 1166(a).

34.     Defendants are engaged in "class III" gambling as defined by the Indian Regulatory Gaming Act.

35.     Defendants have no authority to conduct "class III" gambling or use "electronic or electromechanical facsimiles of any game of chance *or slot machines of any kind*." 25 U.S.C. § 2703(7)(B) (emphasis added).

36.     Defendants' "class III" gambling activities are enjoinable under federal law pursuant to 18 U.S.C. § 1166(a) & (c).

37.     The State of Alabama, through its Attorney General, is a proper party to file an action to enjoin the public nuisance of unlawful gambling on Indian lands.

**REQUEST FOR RELIEF**

WHEREFORE, PREMISES CONSIDERED, the State of Alabama respectfully requests this Honorable Court enter an Order

1) declaring that the gambling activities being conducted by or through the Defendants is a public nuisance;

2) permanently enjoining such unlawful gambling activities; and

3) ordering such other and further relief as this Court deems appropriate.

        Respectfully submitted,

        LUTHER STRANGE (STR003)
        ATTORNEY GENERAL

        /s/  Andrew L. Brasher
        Andrew L. Brasher  (BRA143)
        Deputy Solicitor General

OF COUNSEL:
Andrew L. Brasher  (BRA143)
*Deputy Solicitor General*
Henry T. Reagan II   (REA021)
*Deputy Attorney General*
Office of the Attorney General
501 Washington Avenue
Post Office Box 300152
Montgomery, AL  36130-0152
(334) 242-7300
(334) 242-4890 – FAX
abrasher@ago.state.al.us

9

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system and service will be perfected upon the following counsel of record on this day the 11th of April, 2013:

Robin G. Laurie
rlaurie@balch.com
Kelly F. Pate
kpate@balch.com
**Balch & Bingham LLP**
Post Office Box 78
Montgomery, AL 36101-0078
Telephone: (334) 834-6500
Facsimile: (334) 269-3115

Keith M. Harper
kharper@kilpatricktownsend.com
**Kilpatrick Townsend & Stockton LLP**
607 14th Street, NW, Suite 900
Washington, D.C. 20005-2018
Telephone: (202) 508-5844
Facsimile: (202) 508-5858

Mark H. Reeves
mreeves@kilpatricktownsend.com
**Kilpatrick Townsend & Stockton LLP**
699 Broad Street, Suite 1400
Augusta, GA 30901-1453
Telephone: (706) 823-4206
Facsimile: (706) 828-4488

                                        /s/  Andrew L. Brasher
                                             OF COUNSEL