IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| STATE OF ALABAMA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| PCI GAMING AUTHORITY, BUFORD ROLIN, STEPHANIE BRYAN, ROBERT MCGHEE, DAVID GEHMAN, ARTHUR MOTHERSHED, SANDY HOLLINGER, GARVIS SELLS, EDDIE TULLIS, KEITH MARTIN, BRIDGET WASDIN, MATTHEW MARTIN, BILLY SMITH, and TIM MANNING, | ) ) ) Civil Action No. 2:13-cv-00178-WKW-WC ) ) ) ) ) ) |
| | ) |
| Defendants. | ) |

## BRIEF IN SUPPORT OF TRIBAL DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT

This case originated as a misguided attempt by the State of Alabama to have its state courts apply state laws to enjoin federally regulated gaming activity conducted by a federally recognized Indian tribe on Indian lands held in trust by the federal government. While the State responded to removal by filing an amended complaint making new arguments and citing additional authority, its aim remains the same – to use state laws to enjoin federally regulated and approved gaming activities on federally held Indian lands.

The State's claims are fatally flawed because (1) the Defendants enjoy sovereign immunity from the State's lawsuit and (2) Indian gaming is governed and regulated exclusively by federal law, the Indian Gaming Regulatory Act (IGRA), 25 U.S.C. §§ 2701, *et seq.*, and its implementing regulations. IGRA preempts state law and vests tribes and the federal government with the exclusive authority to regulate tribal gaming and enforce gaming laws on Indian lands, at least in the absence of a negotiated tribal-state compact. The State thus has no valid cause of

action against the Defendants under either state or federal law. The State is now litigating in the appropriate, federal forum, but the fundamental premise of its action – the application of state law to federally regulated Indian gaming – remains meritless. The Court should dismiss the State's claims in their entirety.

## BACKGROUND

The Poarch Band of Creek Indians (PBCI or the Tribe) is a federally recognized, sovereign Indian tribe eligible for special services and programs provided by the United States by virtue of PBCI's and its members' status as Indians. *See* 77 Fed. Reg. 47868, 47871 (August 10, 2012) (listing federally recognized tribes).[1] Defendant PCI Gaming Authority (PCI Gaming) is a tribal enterprise wholly owned by PBCI that conducts gaming activity at three sites within the exterior boundaries of the State of Alabama. *See* Doc. 10, First Am. Compl. (Am. Compl.) ¶¶ 5, 9.[2] All three of PBCI's gaming facilities are located on Indian lands held in trust by the United States for the benefit of PBCI. *See* Doc. 1, Ex. A, Certified Copies of Deeds.[3] The individual Defendants are or were members of the PBCI Tribal Council and/or directors of PCI Gaming, and they are all sued exclusively in their official capacities.[4] *See* Am. Compl. ¶¶ 6-7.

---

[1] Although the complaint does not identify PBCI as a federally recognized Indian tribe, the Court can take judicial notice of this fact. *See* 44 U.S.C. § 1507 ("The contents of the Federal Register shall be judicially noticed and without prejudice to any other mode of citation, may be cited volume and page number."); *United States v. Zepeda*, 705 F.3d 1052, 1064 (9th Cir. 2013).

[2] While the Defendants vehemently disagree with many of the factual allegations and characterizations set forth in the Plaintiff's complaint, they will cite it where possible for undisputed background facts. Citation of the complaint in no way concedes the validity of its factual or legal allegations, including, but certainly not limited to, the legal allegation that PBCI conducts Class III gaming at its facilities.

[3] The federal ownership and trust status of the lands in question is a matter of public record of which the Court may take judicial notice. *See, e.g., Halmos v. Bomardier Aerospace Corp.*, 404 Fed. Appx. 376, 377 (11th Cir. 2010) (citing numerous cases for the proposition that "a district court may take judicial notice of matters of public record without converting a Rule 12(b)(6) motion into a Rule 56 motion"); *Iowa Tribe of Kan. & Neb. v. Salazar*, 607 F.3d 1225, 1229 n.2 (10th Cir. 2010) (taking judicial notice under Fed. R. Ev. 201(d) of deed placing lands into trust).

[4] Individual Defendant Bridget Wasdin is no longer a director of PCI Gaming.

# ARGUMENT AND ANALYSIS

The State sets forth two putative grounds for relief. First, it alleges that the Defendants are maintaining a state law public nuisance by conducting gaming activity that is not in accordance with Alabama law. *See* Am. Compl. Count I. Second, it contends that this same activity constitutes a federal law public nuisance, either because it allegedly constitutes a nuisance under state law or because it violates IGRA. *See id.* Count II. Both claims are wholly without merit.

As an initial matter, the Defendants enjoy sovereign immunity from suit. Accordingly, the Plaintiff's claims should be dismissed in their entirety due to the Court's lack of subject matter jurisdiction.

Even if the Defendants did not enjoy immunity, the complaint fails to state any claim upon which relief can be granted. The State's attempt to bring a purely state law claim fails because it is well-settled that IGRA preempts state laws with respect to gaming activity conducted on Indian lands. And the State's attempt to state a federal claim for violation of IGRA – via IGRA's putative incorporation of state law or otherwise – fails because IGRA grants exclusive enforcement authority to the federal government, leaving the State with no federal cause of action to enforce either state gaming laws or IGRA against the Defendants or to otherwise regulate the Tribe's gaming activity.

## I.     The Defendants Enjoy Sovereign Immunity from the State's Suit.

The Eleventh Circuit has recently and repeatedly recognized "that 'as a matter of federal law, an Indian tribe is subject to suit only where Congress has authorized the suit or the tribe has waived its immunity.'" *Contour Spa at the Hard Rock, Inc. v. Seminole Tribe of Fla.*, 692 F.3d 1200, 1203-04 (11th Cir. 2012) (quoting *Kiowa Tribe of Okla. v. Mfg. Techs., Inc.*, 523 U.S. 751, 754 (1998)); *Furry v. Miccosukee Tribe of Indians of Fla.*, 685 F.3d 1224, 1226 (11th Cir. 2012).

It is settled law that PBCI is an Indian tribe that enjoys sovereign immunity absent a tribal waiver or congressional abrogation. *See Freemanville Water Sys., Inc. v. Poarch Band of Creek Indians*, 563 F.3d 1205 (11th Cir. 2009) (affirming the district court's dismissal of claims against PBCI *and PCI Gaming* on the grounds that their sovereign immunity deprived the district court of jurisdiction). Sovereign immunity bars actions seeking declaratory and injunctive relief as well as claims for monetary relief. *See Florida v. Seminole Tribe of Fla.*, 181 F.3d 1237, 1244-45 (11th Cir. 1999); *see also Michigan v. Bay Mills Indian Cmty.*, 695 F.3d 406, 414 (6th Cir. 2012), *petition for cert. filed*, 81 U.S.L.W. 3251 (U.S. Oct. 23, 2012) (No. 12-515).

Tribal sovereign immunity applies not only to the tribe itself, but also to tribal enterprises, such as Defendant PCI Gaming, that are owned by and act as an arm or instrumentality of the tribe. *See*, *e.g.*, *Miller v. Wright*, 705 F.3d 919, 923-924 (9th Cir. 2013) ("The settled law of our circuit is that tribal corporations acting as an arm of the tribe enjoy the same sovereign immunity accorded to the tribe itself." (internal quotation omitted)); *Freemanville*, 563 F.3d at 1207 n.1; *Sanderford v. Creek Casino Montgomery*, 2013 WL 131432 at *2 (M.D. Ala. Jan. 10, 2013) (Watkins, J.) ("Defendant Creek Casino is indistinguishable from the Tribe for the purpose of sovereign immunity."); *Allman v. Creek Casino Wetumpka*, 2011 WL 2313706 at *2 (M.D. Ala. May 23, 2011), *adopted, complaint dismissed by* 2011 U.S. Dist. LEXIS 62726 (M.D. Ala. June 13, 2011), (holding that PBCI's sovereign immunity extended to one of the Tribe's gaming facilities). The State does not allege that PCI Gaming has waived its sovereign immunity in this case, nor does it contend that Congress has abrogated PCI Gaming's immunity. Accordingly, all claims against Defendant PCI Gaming should be dismissed on sovereign immunity grounds.

228223.2

Tribal officials such as the individual Defendants also are protected by their tribe's sovereign immunity when acting in their official capacities and within the scope of their authority. *See Tamiami Partners, Ltd. v. Miccosukee Tribe of Indians of Fla.* (*Tamiami II*), 177 F.3d 1212, 1226 (11th Cir. 1999). The Plaintiff concedes that the individual Defendants are being sued for actions undertaken in their official capacities, *see* Am. Compl. ¶¶ 6-7, and it is clear as a matter of federal law that the conduct of gaming activity on Indian lands is within the scope of tribal officials' authority.  *See* 25 U.S.C. §§ 2701(5) ("Indian tribes have the exclusive right to regulate gaming activity on Indian lands if the gaming activity is not prohibited by federal law and is conducted within a State which does not … prohibit such gaming activity.") & 2710(a)(2) ("Any class II gaming on Indian lands shall continue to be within the jurisdiction of the Indian tribes …."); Letter from Eric Shepard, NIGC Acting General Counsel, to Luther Strange, Attorney General of Alabama (March 14, 2013), *Doc. 1*, Ex. B. ("The Poarch Band is a federally recognized Indian tribe, it operates its gaming on 'Indian lands' as defined by the Act, and Alabama permits the play of bingo. Since IGRA preempts Alabama's laws regarding gaming, the Poarch Band may operate bingo, as defined by IGRA, on its Indian lands …."). Accordingly, the individual Defendants enjoy sovereign immunity, and the Plaintiff's claims should be dismissed for lack of jurisdiction.

The Plaintiff seeks to circumvent the individual Defendants' sovereign immunity by alleging that PBCI is engaged in unlawful gaming activity in violation of state laws and IGRA and that the individual Defendants therefore must be acting in excess of their authority. *See* Am. Compl. ¶ 3. Even if the Court is compelled to credit the State's factually and legally erroneous allegation regarding the legality of the Tribe's gaming at this stage of the proceedings, it is insufficient to overcome tribal sovereign immunity. When, as here, the complaint identifies no

discrete, individual actions or omissions by the individually named tribal officials, the suit is really a suit against the tribe itself. *See*, *e.g.*, *Imperial Granite Co. v. Pala Band of Mission Indians*, 940 F.2d 1269, 1271 (9th Cir. 1991); *Miller v. Coyhis*, 877 F. Supp. 1262, 1266 (E.D. Wisc. 1995). In such cases, a court need not even reach the question of whether the individual defendants were acting within the scope of their authority, because the tribe's – *i.e.*, the true defendant's – sovereign immunity applies and is not defeated by an allegation that the tribe acted beyond its powers. *See id.* To hold otherwise would erode tremendously the doctrine of tribal sovereign immunity, as it would subject tribes to suit as a matter of course so long as a plaintiff observed the procedural formality of naming one or more tribal officials as defendants. Tribal sovereign immunity cannot be so easily circumvented or lightly brushed aside.

Because the Defendants enjoy sovereign immunity, the Court must dismiss the Plaintiff's claims due to lack of subject matter jurisdiction.

## II.     IGRA Preempts the State's Putative State Law Cause of Action.

The first count of the State's complaint asserts that gaming activity on PBCI's tribal lands constitutes a public nuisance under Alabama law.[5] According to the State's theory, Alabama law, including its definitions of lawful gaming activity, applies to and governs gaming on Indian lands. *See* Am. Compl. ¶¶ 20-24 & 26. And, because the gaming activity that takes place on PBCI's tribal lands is allegedly prohibited by Alabama law, the State contends that it can bring an action to have that activity enjoined by this Court pursuant to state law. *Id.* ¶ 30. The State's theory is incorrect in all respects.

---

[5] While the Plaintiff characterizes its first count as asserting a "public nuisance under state law," it cites federal law in that count, and its second count, supposedly asserting a "public nuisance under federal law," relies largely on state law. The Defendants understand the Plaintiff's complaint to allege two distinct claims – one under state law and another under federal law – and respond accordingly. However, even if the Defendants misunderstand the thrust of Plaintiff's argument, the fact remains that the Plaintiff has failed to, and indeed cannot, state a valid cause of action to regulate gaming activity or enforce federal or state gaming laws on PBCI tribal lands for the reasons set forth herein.

6

    A.    <u>IGRA Occupies the Field for Regulating Gaming on Indian Lands.</u>

State law in this instance is preempted by IGRA, "a comprehensive statute governing the operation of gaming facilities on Indian lands." *Tamiami Partners, Ltd. v. Miccosukee Tribe of Indians of Fla.* (*Tamiami I*), 63 F.3d 1030, 1032 (11th Cir. 1995). The Eleventh Circuit has explicitly noted "that IGRA 'is intended to expressly preempt the field'" of Indian gaming regulation. *Id.* at 1033 (quoting S. Rep. No. 100-446, at 6 (1988), *reprinted in* 1988 U.S.C.C.A.N. 3071, 3074). *See also* 25 U.S.C. § 2702(3) (providing that one of the purposes of IGRA is "the establishment of Federal standards for gaming on Indian lands"); *United Keetoowah Band of Cherokee Indians v. Oklahoma*, 927 F.2d 1170, 1181 (10th Cir. 1991) ("Congress has clearly occupied the regulatory field on Indian gaming."). IGRA's complete displacement of state law in the area of Indian gaming "is evidenced by the broad reach of the statute's regulatory and enforcement provisions and is underscored by the comprehensive regulations promulgated under the statute." *Tamiami I*, 63 F.3d at 1033. Indeed, IGRA's preemptive force is so strong that it is one of the very few federal statutes that courts have held sufficient to invoke the doctrine of complete preemption. *See*, *e.g.*, *Gaming Corp. of Am. v. Dorsey & Whitney*, 88 F.3d 536, 544 (8th Cir. 1996) ("The statute itself reveals a comprehensive regulatory structure for Indian gaming. The only avenue for significant state involvement is through tribal-state compacts governing class III gaming.").[6]

The Eleventh Circuit and numerous other federal courts have made it crystal clear that IGRA leaves no room for the application of state law in the field of Indian gaming. *See*, *e.g.*, *id.*;

---

[6] Any statute broad enough to result in complete preemption is necessarily sufficient to support the application of the less stringent doctrine of defensive preemption that defeats the State's state law claim in this case.

7

*Tamiami I*, 63 F.3d at 1033. Accordingly, to the extent that the State attempts to bring a purely state law nuisance action, its claim is preempted by IGRA and must be dismissed.[7]

      B.      <u>The Tribe's Lands are Indian Lands Subject to IGRA.</u>

The State alleges, almost in passing, that IGRA does not apply in this case (and therefore cannot preempt state law) because, "on information and belief, [PBCI's] casinos are not located on properly recognized Indian lands." Am. Compl ¶ 25. This assertion, which relies on a willful denial of the federal ownership of the lands in question and a mischaracterization of the Supreme Court's opinion in *Carcieri v. Salazar*, 555 U.S. 379 (2009), is easily refuted on multiple grounds.

The trust deeds and recent correspondence from the National Indian Gaming Commission (NIGC) attached to the Defendant's notice of removal, *Doc. 1*, Ex. A-B, conclusively establish that the lands at issue are Indian lands that the United States holds in trust for the benefit of PBCI. The Plaintiff has not challenged the validity of the United States' trust title to the lands or their status as Indian lands in this action, nor could it do so in the absence of the United States as a party. *See*, *e.g.*, *Minnesota v. United States*, 305 U.S. 382, 386-387 (1939); *Carlson v. Tulalip Tribes of Washington*, 510 F.2d 1337, 1339 (9th Cir. 1975) ("[T]he United States is a necessary party to any action in which the relief sought might interfere with its obligation to protect Indian lands against alienation."). Even if the Plaintiff had challenged the status of the Tribe's Indian lands, however, its challenge would fail on the merits because *Carcieri* did not operate retroactively to divest the United States of title to lands that it holds in trust for the benefit of Indian tribes. *See Carcieri*, 555 U.S. at 385 n.3 (indicating that the status of 1800 acres

---

[7] To the extent that the State's argument, even in the context of its putative state law claim, is that IGRA incorporates state laws through 18 U.S.C. § 1166 and thus makes them applicable to tribal gaming, that argument is addressed and refuted in the discussion of the State's federal law nuisance claim, *infra*.

228223.2

previously taken into trust for the Narragansett Tribe was not before the Court, and thus was not affected by the Court's decision). For all of these reasons, the Court can summarily reject the State's spurious allegation that the lands in question are not Indian lands subject to IGRA.[8]

IGRA indisputably applies to and governs PBCI's gaming activities, and it just as indisputably preempts the Plaintiff's putative state law claims. The Court should dismiss the state law count of the complaint for failure to state a claim.

### III. The State Has No Authority to Regulate the Tribe's Gaming Activity and No Federal Cause of Action to Enforce IGRA or State Gaming Laws against the Tribe.

The State next argues that PBCI's gaming activities constitute a federal law public nuisance under 18 U.S.C. § 1166. That statute, the State contends, makes all state gambling laws applicable to gaming on PBCI's tribal lands for purposes of federal law. *See* Am. Compl. ¶¶ 32-33. Ergo, the State reasons, because the Tribe's gaming activity allegedly would constitute a public nuisance under state law if conducted on non-tribal lands, it necessarily constitutes a public nuisance under federal law when conducted on Indian lands subject to IGRA. The State further contends that § 1166 gives the State a federal cause of action to enjoin any PBCI gaming activity that is not in accordance with state gambling laws or with IGRA. *Id.* ¶¶ 35-37. The State's argument fundamentally misconstrues the nature of IGRA and the effect of § 1166.

One of IGRA's foundational precepts is that states have a very limited role in regulating Indian gaming absent tribal consent. As part of its limitations on states' role in Indian gaming, IGRA vests the United States with "exclusive authority to enforce IGRA in the federal courts." Cohen's Handbook of Federal Indian Law (2012 ed.), § 12.07[3]. These principles are clear from

---

[8] It is also important to note that *Carcieri* in no way affected the Tribe's sovereign immunity, which is not related to the land ownership issue addressed by the Supreme Court. *See*, *e.g.*, *Kiowa Tribe v. Mfg. Techs., Inc.*, 523 U.S. 751, 760 (1998) ("Tribes enjoy immunity from suit on contracts . . . whether they were made on or off a reservation."); *Freemanville*, 563 F.3d at 1210. There are a host of additional reasons why *Carcieri* is inapplicable to PBCI, its tribal trust lands, and any of the issues in this case, but they far exceed the scope of this litigation and need not be recounted here.

the Act's text and legislative history, and they are reinforced and reaffirmed by voluminous federal authority interpreting IGRA and related statutes. Contrary to the State's argument, 18 U.S.C. § 1166 does not displace or nullify these fundamental features of IGRA. Because the State lacks the authority to regulate the Tribe's gaming or the right to sue the Tribe to seek enforcement of IGRA, its federal cause of action fails to state a claim and must be dismissed.

> A. IGRA Grants States a Very Limited Role in Regulating Gaming on Indian Lands and an Even Smaller Role in Enforcing IGRA.

IGRA strictly limits state involvement in the regulation of gaming on Indian lands and provides almost no role for state enforcement of IGRA or other gaming laws in Indian Country. The Act's text and legislative history reveal Congress's keen awareness of and respect for tribal sovereignty and tribal rights of self-governance free from state interference. Indeed, IGRA is explicitly based upon the "principal" federal goals of "promot[ing] tribal economic development, tribal self-sufficiency, and strong tribal government" and congressional recognition that "Indian tribes have the *exclusive* right to regulate gaming activity on Indian lands if the gaming is not specifically prohibited by *Federal* law and is conducted within a State which does not … prohibit such gaming activity." 25 U.S.C. § 2701(4)-(5) (emphases added).[9] The stated purposes of IGRA include "provid[ing] a statutory basis for the regulation of gaming *by an Indian tribe*"

---

[9] In order for a state to "prohibit such gaming activity" for IGRA purposes, it must prohibit that activity for all purposes by all persons, organizations, and entities within the state. *See* 25 U.S.C. § 2710(b)(1). For instance, if a state allows any charitable or other groups to conduct bingo games, then the state does not prohibit bingo within the meaning of IGRA, and tribes within that state can conduct bingo on their eligible Indian lands free of state regulation. And where tribes are allowed to play bingo, they are permitted to play it as defined in IGRA, not as defined under state law. *See* 25 U.S.C. 2703(7); S. Rep. No. 100-446, at 11-12 ("In … 45 States [including Alabama], some forms of bingo are permitted and tribes with Indian lands in those States are free to operate bingo on Indian lands, subject to the regulatory scheme set forth in the bill."); *United Keetoowah Band of Cherokee Indians v. Oklahoma*, 927 F.2d 1170, 1181 (10th Cir. 1991) ("'[T]he legislative history of IGRA reveals that Congress intended to permit a particular gaming activity, even if conducted in a matter inconsistent with state law, if the state law merely regulated, as opposed to completely barred, the particular gaming activity.'" (internal punctuation omitted) (quoting *Sisseton-Wahpeton Sioux Tribe v. United States Dep't of Justice*, 897 F.2d 358, 365 (8th Cir. 1990)).

228223.2

and establishing an "independent *Federal* regulatory authority [the NIGC] for gaming on Indian lands … [and] *Federal* standards" for such gaming. 25 U.S.C. § 2702(2)-(3) (emphases added). From the outset, then, IGRA establishes that regulation of gaming and enforcement of gaming laws on Indian lands are left to gaming tribes and the federal government pursuant to federal law, with states and state law playing a very limited role.

The substantive provisions of IGRA likewise provide for nearly exclusive federal and tribal regulation of gaming and enforcement of gaming laws on Indian lands. Specifically, IGRA provides that all "class II gaming on Indian lands shall continue to be within the jurisdiction of the Indian tribes … subject to the provisions of this chapter." 25 U.S.C. § 2710(a)(2). The only way that a state can regulate class II gaming on Indian lands under IGRA is by completely prohibiting such gaming by all persons, entities, and organizations. *See* § 2710(b)(1). States potentially have a larger role in the context of class III gaming, which is lawful on Indian lands only when "conducted in conformance with a Tribal-State compact entered into by the Indian tribe and the State …." 25 U.S.C. § 2710(d)(1)(C). Accordingly, states can regulate class III gaming on tribal lands if they enter into a compact granting them the authority to do so. Alabama, however, has not – and does not allege that it has – enacted an outright prohibition on class II gaming by all persons, entities, and organizations within the State or entered into a tribal-state compact with PBCI to govern class III gaming on the Tribe's lands. The State therefore has no regulatory authority over gaming activity on the Tribe's lands under IGRA.

As limited as the states' role in regulation of Indian gaming activity is under IGRA, their role in enforcement of gaming laws on Indian lands is smaller still. If a tribe or individual engages in unlawful gaming on Indian lands – as the State alleges the Tribe has done in this case – IGRA provides several potential remedies. For instance, the offender may be subject to

criminal prosecution under applicable federal laws, *see* 25 U.S.C. § 2710(d)(6) (referencing 14 U.S.C. § 1175) & 18 U.S.C. § 1166(d), and the NIGC can fine the offender and shut down the facility in question. *See* 25 U.S.C. § 2713. However, the only enforcement role that IGRA identifies for states is to file suit "to enjoin a class III gaming activity located on Indian lands and conducted *in violation of any tribal-state compact … that is in effect*." § 2710(d)(7)(A)(ii) (emphasis added). Outside of this narrow context, IGRA does not give rise to any private right of action against an Indian tribe to enjoin or otherwise interfere with gaming activity on Indian lands. *See*, *e.g.*, *Seminole Tribe*, 181 F.3d at 1245-49; Part III.B, *infra*. Because no tribal-state compact is in effect between Alabama and PBCI, the State is foreclosed from exercising the lone enforcement option that could be available to it under IGRA.

IGRA's legislative history underscores the limited role for state involvement in gaming on Indian lands. It shows that Congress fully considered and "struck a careful balance among federal, state, and tribal interests." *Seminole Tribe*, 181 F.3d at 1247 (citing S. Rep. No. 100-446, at 5-6); *see generally Seminole Tribe*, 181 F.3d at 1247-48 (discussing IGRA's legislative history and its support for limiting state authority over tribal gaming). A "central feature of this balance is IGRA's thoroughgoing limit[ation] on the application of state laws and the extension of state jurisdiction to tribal lands." *Id.* at 1247. The Senate committee responsible for IGRA succinctly explained this limitation: "unless a tribe affirmatively elects to have State laws and State jurisdiction extend to tribal lands [through a tribal-state compact], the Congress will not unilaterally impose *or allow* State jurisdiction on Indian lands for the regulation of Indian gaming activities." S. Rep. No. 100-446, at 5-6 (emphasis added). *See also id.* at 6 ("In no instance, does [IGRA] contemplate the extension of State jurisdiction or the application of State laws for any other purpose" than through a tribal-state compact.). This legislative history

12

reinforces what is apparent from IGRA's statutory text – outside the context of a tribal-state compact, a state has no regulatory or enforcement authority over tribal gaming on Indian lands.

Because Alabama has not entered into a gaming compact with the Tribe, it has no regulatory or enforcement authority over gaming on the Tribe's lands under IGRA. The federal law count of the complaint thus fails to state a claim and should be dismissed with prejudice.

B. 18 U.S.C. § 1166 Does Not Displace IGRA's Carefully Wrought Balancing of Federal, State, and Tribal Interests or Remove IGRA's Limits on State Authority.

As discussed *supra*, the strict limitations on state enforcement of IGRA and state regulation of Indian gaming reflect careful congressional balancing of the competing federal, state, and tribal interests at stake. The State, however, would have this Court disregard that careful balancing by subjugating all of IGRA's limitations on state regulatory and enforcement authority to the Act's penal provision, 18 U.S.C. § 1166, and recognizing a right for non-federal parties to bring a civil enforcement action that is not contemplated anywhere in IGRA's text or legislative history.[10]

The Eleventh Circuit's *Seminole Tribe* opinion, while not controlling on this issue, is instructive. Like this case, *Seminole Tribe* involved a lawsuit by a state seeking to enjoin a tribe from conducting allegedly unlawful class III gaming. The district court granted the tribe's motion to dismiss due to failure to state a claim, and the Eleventh Circuit affirmed. Based on its thorough review of IGRA's statutory text and legislative history, the Court held that implying a right of action for a state to enjoin alleged violations of IGRA in the absence of a tribal-state compact "would frustrate [congressional] intent[,] … upset the carefully-struck congressional

---

[10] While it is codified in Title 18 of the United States Code – with other penal provisions – rather than in Title 25 with the rest of IGRA, 18 U.S.C. § 1166 was a part of the bill that became IGRA and was passed by Congress as a constituent part of the larger Act. *See* Pub. L. No. 100-497, § 23, 102 Stat. 2467, 2487 (1988).

13

balance of federal, state, and tribal interests and objectives" embodied in the Act, and "wreak havoc upon the existing remedial scheme of IGRA." *Seminole Tribe*, 181 F.3d at 1248-49. The Court further explained that "[g]iving a state an implied right of action against class III tribal gaming conducted in the absence of a compact would be tantamount to deleting" one of the requirements of the express right of action recognized by IGRA – *i.e.*, the existence of a tribal-state compact "that is in effect." *Id.* at 1249. Accordingly, the Court held that "there is no implied right of action under IGRA for declaratory or injunctive relief against class III gaming that is being unlawfully conducted without a Tribal-State compact." *Id.* at 1245-46.

*Seminole Tribe* forecloses any argument that the State has an implied right of action to enjoin the Tribe's alleged class III gaming in the absence of a compact.[11] No doubt aware of this holding, the State advances a slightly different argument. Rather than claiming an implied right of action to enforce IGRA or state gaming laws in federal court, the State asserts that § 1166 grants it an express (albeit tacit) right to do so. It is upon this supposed express right of action that the State's entire case must rest.

While the Eleventh Circuit did not resolve the State's current argument in *Seminole Tribe*, it cast a skeptical eye on it. *See Seminole Tribe*, 181 F.3d at 1246 n.13 (expressing "some doubt" as to whether § 1166 would permit such an action, but concluding that the issue was not properly before the Court). The Court's skepticism makes sense in light of its reasons for rejecting an implied right of action. Just as finding an implied right of action for states to enjoin alleged violations of IGRA in the absence of a compact would "wreak havoc" on IGRA's

---

[11] To the extent that the Tribe is conducting class II gaming, the State's failure to state a claim is indisputable. Such gaming is lawful under IGRA and exclusively within the jurisdiction of the Tribe, subject to NIGC oversight. *See* 25 U.S.C. § 2710(a)-(b). Additionally, class II gaming is explicitly exempted from the purview of 18 U.S.C. § 1166, the penal statute upon which the State's case rests. *See* § 1166(c)(1). The State's case is entirely dependent upon its erroneous allegation that PBCI is engaged in unlawful class III gaming.

remedial scheme and undermine the "carefully-struck balance" of state, federal, and tribal interests reflected in the rest of the Act, so too would reading the Act's penal provision as creating an express right of action for the same relief. It is implausible that Congress would undermine IGRA's carefully balanced approach to the application and enforcement of federal Indian gaming laws by giving states an unfettered right to enforce their own laws on Indian lands through civil actions. *See*, *e.g.*, *Bay Mills Indian Cmty.*, 695 F.3d at 415 (rejecting the argument that § 1166 authorizes states to sue Indian tribes in the absence of a compact because such a reading of the statute "would elevate that subsection to a position of paramount importance for tribal-state relations," which was not the intent of Congress). That Congress would create that civil right of action in IGRA's penal provision – which is intended to increase the federal government's ability to enforce IGRA and grants the United States "exclusive jurisdiction over criminal prosecutions of violations of State gaming laws that are made applicable under this section," 18 U.S.C. § 1166(d) – and without a clear expression of an intent to do so is inconceivable.

Numerous courts have reached this same conclusion, recognizing that IGRA does not give rise to *any* private, federal right of action for a state (or any other non-federal entity) to enforce gaming laws on Indian lands in the absence of a tribal-state compact. *See*, *e.g.*, *Cabazon Band of Mission Indians v. Wilson*, 124 F.3d 1050, 1059 (9th Cir. 1997) ("Outside the express provisions of a compact, the enforcement of IGRA's prohibitions on class III gaming remains the exclusive province of the federal government." (citing *Sycuan Band of Mission Indians v. Roache*, 54 F.3d 535, 538 (9th Cir. 1995)); *United Keetoowah Band*, 927 F.2d at 1177. *See also Bay Mills Indian Cmty.*, 695 F.3d at 415 ("Section 1166(a) itself does not expressly authorize the State to sue anyone, much less an Indian tribe."); *Wyandotte Nation v. Sebelius*, 443 F.3d 1247,

1256 (10th Cir. 2006) ("IGRA gives the federal government exclusive jurisdiction on Indian land."); *Rhode Island v. Narragansett Indian Tribe*, 19 F.3d 685, 690 (1st Cir. 1994) (citing *United Keetoowah Band*); *Wyandotte Nation v. Sebelius*, 337 F. Supp. 2d 1253, 1257 (D. Kan. 2004), *aff'd in relevant part at* 443 F.3d 1247 ("The bottom line is, although it may be 'unlawful' for a tribe to engage in Class III gaming absent a compact, the state is powerless to regulate or prohibit such gaming."). The Tenth Circuit's discussion of the issue in *United Keetoowah Band* is representative. The Court recognized that § 1166 "incorporates state laws as the federal law in governing all non-conforming gaming in Indian country." 927 F.2d at 1177. The Court also recognized, however, that IGRA, when viewed in its entirety, vested "the power to enforce these newly incorporated laws … solely with the United States. … Nowhere does the statute indicate that the State may, on its own or on behalf of the federal government, seek to impose criminal *or other sanctions* against an allegedly unlawful tribal bingo game." *Id*. (emphasis added). Echoing the Eleventh Circuit's reasoning in rejecting an implied right of action for states to seek the injunction of allegedly unlawful gaming in Indian Country absent a compact, the Tenth Circuit went on to explain that "the very structure of the IGRA permits assertion of State civil or criminal jurisdiction over Indian gaming *only* when a tribal-state compact has been reached to regulate class III gaming." *Id.* (emphasis in original).

Alabama has declined to enter into a class III gaming compact with the Tribe. *See Poarch Band of Creek Indians v. Alabama*, 776 F. Supp. 550, 552 (S.D. Ala. 1991), *aff'd sub nom.*, *Seminole Tribe v. Florida*, 11 F.3d 1016 (11th Cir. 1994). As a result, it has no right of action – express, implied, state, or federal – to enforce IGRA or its own gaming laws or to enjoin allegedly unlawful gaming activity on tribal lands. This result is compelled by the language, legislative history, structure, and intent of IGRA, and by the canon of construction requiring that

16

any ambiguities in statutes such as IGRA, which are enacted for the benefit of Indians, be resolved in favor of Indians. *See*, *e.g.*, *Artichoke Joe's California Grand Casino v. Norton*, 353 F.3d 712, 730 (9th Cir. 2003) (applying the canon to IGRA, which "is undoubtedly a statute passed for the benefit of Indian tribes"); *United Keetoowah Band*, 927 F.2d at 1179 (recognizing the canon's applicability to IGRA, while noting that IGRA's statutory language and legislative history were so clear as to "almost make it mere surplusage").

Because it lacks any right of action to enforce gaming laws on the Tribe's lands, the State has failed to state a claim. Its action should be dismissed in its entirety.

## CONCLUSION

By enacting IGRA, Congress established a comprehensive set of federal standards to govern tribal gaming on Indian lands. In so doing, it carefully balanced the rights and interests of tribes and states, which it recognized as two "'equal sovereigns.'" *Seminole Tribe*, 181 F.3d at 1248 (quoting S. Rep. No. 100-446, at 13). Through its lawsuit, the State of Alabama attempts to assert an authority that would upset Congress's balancing of interests and subordinate the Tribe's equal sovereignty. Congress did not intend such a result, and this Court should not allow it. The State's complaint should be dismissed.

Respectfully submitted this 9th day of May, 2013.

                                              */s/ Kelly F. Pate*
                                              One of the Attorneys for Defendants

**OF COUNSEL:**

Keith M. Harper (admitted *pro hac vice*)
kharper@kilpatricktownsend.com
**Kilpatrick Townsend & Stockton LLP**
607 14th Street, NW, Suite 900
Washington, D.C. 20005-2018
Telephone: (202) 508-5844
Facsimile: (202) 508-5858

Mark H. Reeves (admitted *pro hac vice*)
mreeves@kilpatricktownsend.com
**Kilpatrick Townsend & Stockton LLP**
699 Broad Street, Suite 1400
Augusta, GA 30901-1453
Telephone: (706) 823-4206
Facsimile: (706) 828-4488

Robin G. Laurie (ASB-4216-U64R)
rlaurie@balch.com
Kelly F. Pate (ASB-5289-L63F)
kpate@balch.com
**Balch & Bingham LLP**
Post Office Box 78
Montgomery, AL 36101-0078
Telephone: (334) 834-6500
Facsimile: (334) 269-3115

## CERTIFICATE OF SERVICE

      I hereby certify that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system and service will be perfected upon the following this the 9th day of May, 2013:

Andrew L. Brasher
Henry S. Reagan III
Office of the Attorney General
501 Washington Avenue
Post Office Box 300152
Montgomery, AL 36130-0152

                                              */s/ Kelly F. Pate*
                                              OF COUNSEL