UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

STATE OF ALABAMA,

     Plaintiff,

v

PCI GAMING AUTHORITY, BUFORD
ROLIN, STEPHANIE BRYAN, ROBERT
MCGHEE, DAVID GEHMAN, ARTHUR
MOTHERSHED, SANDY HOLLINGER,
GARVIS SELLS, EDDIE TULLIS, KEITH
MARTIN, BRIDGET WASDIN, MATTHEW
MARTIN, BILLY SMITH, and TIM
MANNING,

     Defendants.

_____/

No. 2:13-CV-178-WKW-WC

HON. WILLIAM KEITH
WATKINS

**BRIEF OF *AMICUS CURIAE* STATE OF MICHIGAN IN SUPPORT OF
STATE OF ALABAMA'S BRIEF IN OPPOSITION TO MOTION TO DISMISS**

Bill Schuette
Attorney General

John J. Bursch (P57679)
Solicitor General

Matthew Schneider (P62190)
Chief Legal Counsel

S. Peter Manning (P45719)
Division Chief

Louis B. Reinwasser (P37757)
Margaret A. Bettenhausen (P75046)
Assistant Attorneys General
Attorneys for Amicus
State of Michigan
Environment, Natural Resources, and
Agriculture Division
P.O. Box 30755
Lansing, MI  48909
Phone: (517) 373-7540
Fax:  (517) 373-1610
E-mail: reinwasserl@michigan.gov
bettenhausenm@michigan.gov

Dated:  July 3, 2013

# TABLE OF CONTENTS

<u>Page</u>

Table of Contents ..................................................................................................... i

Index of Authorities ................................................................................................ ii

Statement of Interest ............................................................................................. 1

Statement of Facts ................................................................................................. 2

Introduction ........................................................................................................... 3

I.    18 U.S.C. § 1166 authorizes a state to seek enforcement of its civil
      gambling laws in federal court. ...................................................................... 6

      A.    Section 1166 is unambiguous. ................................................................. 6

      B.    The legislative history of IGRA need not be consulted, and, in
            any event, does not support the arguments of the United States
            and the Tribal Officials. ....................................................................... 11

      C.    Other sections of IGRA are irrelevant to the interpretation of
            § 1166. .................................................................................................. 12

II.   Sovereign immunity does not bar this action. .............................................. 16

      A.    *Ex parte Young* applies to claims seeking to enforce IGRA. ................. 16

      B.    *Ex parte Young* does not require a "discrete act." ............................... 17

      C.    The *Seminole Tribe* decision is limited to actions brought under
            25 U.S.C. § 2710 and does not affect this action brought under
            § 1166. .................................................................................................. 18

Conclusion ............................................................................................................ 20

Certificate of Service ........................................................................................... 22

# INDEX OF AUTHORITIES

Page

**Cases**

*Baker Elec. Co-op., Inc. v. Chaske,*
   28 F.3d 1466 (8th Cir. 1994) ...................................................................... 16

*Bates v. U.S.,*
   522 U.S. 23 (1997) .................................................................................... 8

*BNSF Ry. Co. v. Ray,*
   297 F. App'x 675 (9th Cir. 2008) ............................................................. 16

*California v. Cabazon Band of Mission Indians,*
   480 U.S. 202 (1987) ................................................................................. 13

*Comstock Oil & Gas Inc. v. Alabama and Coushatta Indian Tribes of Texas,*
   261 F.3d 567 (5th Cir. 2001) ................................................................... 17

*Diaz v. Michigan Dep't of Corrections,*
   703 F.3d 956 (6th Cir. 2013) ............................................................. 19, 20

*Ex parte Young,*
   209 U.S. 123 (1908) ......................................................................... passim

*Florida v. Seminole Tribe,*
   181 F.3d 1237 (11th Cir. 1999) ................................................................ 10

*Harris v. Garner,*
   216 F.3d 970 (11th Cir. 2000) .................................................................. 11

*Lotierzo v. Woman's World Med. Ctr., Inc.,*
   278 F.3d 1180 (11th Cir. 2002) .................................................................. 2

*Michigan v. Bay Mills Indian Community, et al.,*
   695 F.3d 406 (6th Cir. 2012), *petition for cert. granted*, 81 U.S.L.W. 3251
   (U.S. June 24, 2013) (No. 12-515) ......................................................... 1, 2

*Milavetz, Gallop & Milavetz, P.A. v. United States,*
   559 U.S. 229, 130 S. Ct. 1324 (2010) ...................................................... 11

*Mohamad v. Palestinian Auth.,*
   132 S. Ct. 1702 (2012) ............................................................................. 11

*Oklahoma Tax Commission v. Citizen Band Potawatomi Indian Tribe,*
    498 U.S. 505 (1991) ............................................................................. 16

*Pennsylvania Federation of Sportsmen's Clubs, Inc. v. Hess,*
    297 F.3d 310 (3d Cir. 2002) ................................................................ 19

*Seminole Tribe v. Florida,*
    517 U.S. 44 (1996) ................................................................... passim

*Tenneco Oil Co. v. Sac and Fox Tribe of Indians of Oklahoma,*
    725 F.2d 572 (10th Cir. 1984) .............................................................. 17

*United States v. Santee Sioux Tribe,*
    135 F.3d 558 (8th Cir. 1998) .................................................................. 7

*Virginia Office for Protection and Advocacy v. Stewart,*
    131 S. Ct. 1632 (2011) .................................................................. 19, 20

*Wisconsin v. Baker,*
    698 F.2d 1323 (7th Cir. 1983), *cert. denied,* 463 U.S. 1207 (1983) ......................... 17

## Statutes

18 U.S.C. § 1166 ...................................................................... passim

25 U.S.C. § 2701 *et seq.* ................................................................. 1

25 U.S.C. § 2710 ................................................................... 14, 18

25 U.S.C. § 2710(d) ...................................................................... 15

25 U.S.C. § 2710(d)(3) ............................................................... 18, 19

25 U.S.C. § 2710(d)(3)(C) ............................................................... 13

25 U.S.C. § 2710(d)(7)(B) ............................................................ 19, 20

25 U.S.C. § 2710(d)(7)(B)(iii) ........................................................... 19

25 U.S.C. § 2710(d)(8)(A) ............................................................... 19

29 U.S.C. § 2617(a)(1)(B) ............................................................... 20

Ala. Code § 6-5-120 *et seq.* ........................................................... 10

**Other Authorities**

Cohen's Handbook of Federal Indian Law § 7.05......................................................... 16

S. Rep. 100-446, at 6 (1988)............................................................................................ 12

## STATEMENT OF INTEREST

States have an interest in preventing unlawful gambling within their sovereign borders. This case poses two important questions implicating that interest that are of particular concern to Michigan:

- whether a state can enforce its civil anti-gambling laws in federal court under 18 U.S.C. § 1166, which is part of the Indian Gaming Regulatory Act, 25 U.S.C. § 2701 *et seq.* (IGRA); and

- whether tribal officials have immunity from such claims.

Michigan is currently addressing similar issues in a case it has brought against a tribe in federal court.[1] In that case, Michigan seeks declaratory and injunctive relief to abate the public nuisance of unlawful gambling. And, in the Michigan lawsuit – just as in this case – the State asserts it can bring its public nuisance claim under § 1166 of IGRA.

In Michigan's case, the Sixth Circuit found that it had jurisdiction over the State's state law claims, which include the public nuisance claim. *Bay Mills Indian Community,* 695 F.3d at 413. And though it rejected Michigan's argument that § 1166 abrogates a tribe's immunity, the Sixth Circuit did not otherwise address the State's nuisance claims brought under § 1166. Thus, the Sixth Circuit offered no analysis of the first question before this Court. Michigan believes, however, that

---

[1] The Supreme Court recently granted certiorari in Michigan's case to consider several issues, including jurisdiction under 28 U.S.C. § 1331 and tribal sovereign immunity under 25 U.S.C. § 2710(d). *Michigan v. Bay Mills Indian Community, et al.*, 695 F.3d 406 (6th Cir. 2012), *petition for cert. granted*, 81 U.S.L.W. 3251 (U.S. June 24, 2013) (No. 12-515).

1

the plain language of § 1166 permits a state to seek a civil remedy for violations of its anti-gambling laws.

Regarding the second question, the Sixth Circuit on remand left open the possibility that tribal officers could be sued in their official capacities. *Id.* at 416. Like Alabama, Michigan also seeks prospective injunctive relief from the tribe's officials through an *Ex parte Young*-type claim. And just like the Defendants in this case, the tribal officials in Michigan's case assert that the *Ex parte Young* doctrine is inapplicable to claims arising under IGRA. Michigan disagrees.

Tribal gaming conducted in violation of IGRA raises significant concerns for Michigan. Michigan's experience can provide an informed and unique perspective on these issues that will be of substantial assistance to this Court in resolving this case.

## STATEMENT OF FACTS

The facts relevant to this motion to dismiss are those alleged in Alabama's amended complaint. These facts must be accepted as true for purposes of the motion to dismiss. *Lotierzo v. Woman's World Med. Ctr., Inc.*, 278 F.3d 1180, 1182 (11th Cir. 2002). Michigan will not restate them fully here as it generally accepts Alabama's description of the facts set forth in its brief in opposition to the motion to dismiss. Briefly, however, the critical facts are as follows.

The Defendants are tribal officials of the Poarch Band of Creek Indians who are responsible for the Tribe's gaming operations. Because Alabama does not permit slot machines and other class III casino-type games for any purpose, under

2

federal law, the Tribe cannot conduct such games on its Indian lands.  The amended complaint alleges, however, that the Tribe has been operating games which are, in fact, class III casino-type games in violation of state public nuisance laws.  The State has sued these Tribal Officials under state law as assimilated into federal law, seeking to enjoin the unlawful gaming activities.  The Tribe filed this motion to dismiss, and the United States has filed an *amicus* brief in support of the Tribe's motion.  Michigan files this *amicus* brief in support of Alabama.

## INTRODUCTION

The Defendant Tribal Officials and the United States (in its *amicus* brief) assert that this purely civil action brought by Alabama seeking to enjoin unlawful tribal gaming should be dismissed because, according to them, the federal government has exclusive authority to enforce *both* state criminal and civil anti-gambling laws that are assimilated into federal law under 18 U.S.C. § 1166. Section 1166, however, unambiguously provides otherwise:

> [F]or purposes of Federal law, *all State laws* pertaining to the licensing, regulation, or prohibition of gambling, including *but not limited to criminal sanctions* applicable thereto, shall apply in Indian country in the same manner and to the same extent as such laws apply elsewhere in the State . . . *The United States shall have exclusive jurisdiction over criminal prosecutions* of violations of State gambling laws that are made applicable under this section to Indian country, . . . [Emphasis added.]

Nowhere in § 1166 does it say that the United States has exclusive authority to obtain remedies under assimilated *civil* anti-gambling laws.  The Tribal Officials and the United States do not explain how the above-quoted language can be interpreted to mean anything other than what it clearly says:  that the federal

3

government has exclusive jurisdiction *only* over criminal prosecutions brought under such assimilated laws.  Since there is no dispute that Alabama law permits it to bring a civil action to enjoin a public nuisance, there can be no question that § 1166 permits the State to do just that *as a matter of federal law,* in federal court. Alabama's complaint clearly states a cause of action.

The Defendants' assertion of tribal sovereign immunity does not help them. The State has not sued any tribe, but only seeks to enjoin public officials who are responsible for making decisions concerning the casino-style gaming that violates Alabama law.  Numerous federal courts, including the Supreme Court, have recognized that tribal public officials, just like state officials, are subject to lawsuits seeking only prospective injunctive relief, under the doctrine enunciated in *Ex parte Young*, 209 U.S. 123 (1908).  If it were as simple for public officials to avoid such actions as Defendants and the United States suggest – they assert that a plaintiff seeking to take advantage of the doctrine must first identify some discrete unlawful action taken by each particular defendant – few such actions would survive motions to dismiss.  But the real test, which gets applied to *state* officials all the time, is whether the official has some connection to the activity to be enjoined, and there is no dispute that the allegations in the amended complaint here establish just such a connection.

Finally, the United States argues that based upon the Supreme Court's ruling in *Seminole Tribe v. Florida*, 517 U.S. 44 (1996), the doctrine of *Ex parte Young* cannot be used to enforce IGRA.  But *Seminole Tribe* didn't preclude *Ex parte*

4

*Young* actions brought under any and all provisions of IGRA. Its reasoning was limited to a specific section that the Court believed evidenced Congress's intent to provide a specific remedy that would be inconsistent with *Ex parte Young* injunctions. *Seminole Tribe* did not address § 1166, nor is there a remedial scheme in § 1166 that is remotely comparable to the scheme that prompted the Court to limit *Ex parte Young* relief there. Similar attempts to expand *Seminole Tribe's* very narrow ruling to cover any and every lawsuit brought under IGRA against tribal officials have been rejected by several circuit courts, and should not be countenanced here.

For the foregoing reasons, Defendants' motion to dismiss should be denied.

# ARGUMENT

**I.    18 U.S.C. § 1166 authorizes a state to seek enforcement of its civil gambling laws in federal court.**

### A.    Section 1166 is unambiguous.

Michigan agrees with Alabama's argument that a state can bring a public nuisance action under 18 U.S.C. § 1166 to enjoin unlawful gambling.  Section 1166 assimilates all state anti-gambling laws into federal law if the violations of those anti-gambling laws occur in Indian country and do not involve gambling that is authorized under a tribal-state compact.  That would include all class III gambling activities alleged in the amended complaint, because the State of Alabama and the Poarch Band of Creek Indians (whose officials have been sued here) have no tribal-state compact.[2]

The assimilative language in § 1166 is very broad:

> (a) Subject to subsection (c), for purposes of Federal law, *all State laws pertaining to the licensing, regulation, or prohibition of gambling*, including *but not limited to criminal sanctions* applicable thereto, shall apply in Indian country *in the same manner* and to the same extent as such laws apply elsewhere in the State.

> (b) Whoever in Indian country is guilty of *any act or omission involving gambling*, whether or not conducted or sanctioned by an Indian tribe, which, although not made punishable by any enactment of Congress, would be punishable if committed or omitted within the jurisdiction of the State in which the act or omission occurred, under the laws governing the licensing, regulation or prohibition of gambling in force

---

[2] As discussed below, because Alabama does not permit slot machines and other class III casino-style gaming for any purpose, the State and the Tribe are precluded by IGRA from executing a compact that would allow the Tribe to conduct the games that are the subject of Alabama's complaint.

at the time of such act or omission, shall be guilty of a like offense and subject to a like punishment.  [Emphasis added.]

This statute has been correctly interpreted to assimilate state civil common law. *United States v. Santee Sioux Tribe*, 135 F.3d 558, 565 (8th Cir. 1998)  ("According to the government, 'all State laws' necessarily includes Nebraska civil case law authorizing injunctive relief to effectuate the closure of gambling establishments determined under State law to be public nuisances. We agree.")  Similarly, the reference in the statute to "all State laws . . . including but not limited to criminal sanctions" makes it clear that § 1166 assimilates state civil anti-gambling *statutory* law as well.

The Tribal Officials and the Unites States argue that § 1166 vests both civil and criminal enforcement authority *solely* in the federal government.  However, they rely upon a provision that addresses federal authority *only* over criminal prosecutions:

The United States shall have exclusive jurisdiction over criminal prosecutions of violations of State gambling laws that are made applicable under this section to Indian country, unless an Indian tribe pursuant to a Tribal-State compact approved by the Secretary of the Interior under section 11(d)(8) of the Indian Gaming Regulatory Act, or under any other provision of Federal law, has consented to the transfer to the State of criminal jurisdiction with respect to gambling on the lands of the Indian tribe.

18 U.S.C. § 1166(d).  Nowhere in this section does Congress say that states cannot file lawsuits in federal court to obtain civil injunctions of illegal tribal gaming, but that proposition is the result argued for by the Tribal Officials and the United States here.  The law is clear that courts "ordinarily resist reading words or elements into a statute that do not appear on its face." *Bates v. U.S.*, 522 U.S. 23,

29-30 (1997).  But the United States and the Tribal Officials effectively demand that this section of § 1166 be read:  "The United States shall have exclusive jurisdiction over criminal prosecutions of *and all civil actions for injunctive relief based on* violations of State gambling laws."  This insertion of an exclusive federal civil authority into § 1166 should be rejected.

This is particularly appropriate given the structure of § 1166.  When § 1166(a) and (d) are read together, it is clear that *both* state civil and criminal laws are assimilated into federal law under (a), but under (d) *only enforcement of criminal laws is reserved to the federal government.*  " '[W]here Congress includes particular language in one section of a statute but omits it in another section . . . it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.' " *Bates,* 522 U.S. at 29-30 (citations omitted).  Congress could easily have reserved both criminal and civil enforcement authority to the federal government in subsection (d).  It did not.  The Court should not rewrite § 1166 to comport with the desired outcome of the United States and the Tribal Officials.

The United States asserts that the phrase "for purposes of federal law" in § 1166(a) shows that Congress intended that only the United States could bring actions to enforce rights created under the assimilated state laws.  But this phrase means only that the assimilated laws are now federal laws, which is significant because it gives federal courts clear jurisdictional ground to entertain actions arising from those laws.  The United States' reasoning that the mere fact a law is

"federal" gives it the exclusive right to enforce the law would, as a practical matter, deprive every other person or entity who is not the United States from access to the federal courts, except perhaps in cases where the court exercises diversity jurisdiction. This was obviously not Congress's intent when it assimilated state laws in § 1166.

The United States also implies that § 1166 is a criminal statute so it should have exclusive jurisdiction to enforce it.[3] This argument ignores the clear intent of Congress to assimilate all state civil and criminal laws as discussed above. It also ignores the express mandate that these laws be applied in Indian country "in the same manner" as they are applied outside Indian country. The United States' position effectively converts civil laws into criminal laws – decidedly changing the "manner" in which they would be applied.

This litigation is a case in point. Here, the Alabama Code specifically creates a cause of action for the State to seek an injunction of a public nuisance. Ala. Code

---

[3] Merely because § 1166 is codified in Title 18 of the United States Code does not make it an exclusively criminal statute. It was originally enacted by Congress as just another section of IGRA and could have just as easily been codified in Title 25 which pertains primarily to Indian law matters.

Other evidence of Congress's intent not to give the United States exclusive jurisdiction of matters arising under § 1166 is the statute's express adoption of state laws governing the "licensing" and "regulation" of gambling, not just its "prohibition." Does the United States contend that it has exclusive authority to issue licenses under a given state's law for gambling in Indian country that is not covered by a gaming compact? Many states have established gaming agencies with extensive responsibility for regulating gambling activities. Does the United States intend to usurp those administrative authorities and responsibilities as well? It is clear that the intent of § 1166 was to keep state authority and responsibilities intact in Indian country in the same manner as outside Indian country, with the sole exception that a state cannot assume criminal enforcement jurisdiction as it might do outside Indian country.

§ 6-5-120 *et seq.*  To honor the "in the same manner" mandate, this cause of action should be assimilated whole cloth into federal law, including that aspect of the cause of action providing for the State to be the plaintiff.  Writing this cause of action out of the books, or even substituting the United States as the only party plaintiff, is inconsistent with Congress's intent to have this state law applied in Indian country just as it would be anywhere else.

The United States and the Tribal Officials acknowledge that the Eleventh Circuit has not ruled on this issue, but note that it has, in dicta, discussed whether § 1166 would allow states to seek an injunction of illegal tribal gaming in federal court.  The court wrote:  "An examination of cases that have addressed this provision engenders some doubt about whether it would permit a state to bring an action in federal court seeking state-law injunctive relief against a tribe for violating state gambling laws."  *Florida v. Seminole Tribe*, 181 F.3d 1237, 1246 (11th Cir. 1999).  Of course, this dicta is not binding and, at best, invites this Court to conduct the full analysis of the issue that the Eleventh Circuit did not do:

> As interesting as this question may be, its resolution will have to wait.  Although the State referred to section 1166(a) in its complaint, the State has not subsequently argued — either in opposing the Tribe's motion to dismiss or on appeal — that section 1166(a) provides it with an express cause of action against Chairman Billie. We therefore decline to consider such an argument here.

*Seminole Tribe*, 181 F.3d 1246.  While the Eleventh Circuit's comments concerning § 1166 can certainly be considered here, it is clear that no conclusion can be drawn from them because the court did not have the full benefit of the advocacy of the parties when the comments were made.  Consideration of the arguments presented

10

here by Alabama and Michigan would remove any "doubts" the appeals court might have.

### B. The legislative history of IGRA need not be consulted, and, in any event, does not support the arguments of the United States and the Tribal Officials.

Because there is no textually based argument to explain away the clear language of § 1166, the Tribal Officials and the United States endeavor to move the Court's attention from the text itself by referencing the legislative history of IGRA. Since § 1166 is unambiguous, however, such efforts are unnecessary and inappropriate. *Mohamad v. Palestinian Auth.*, 132 S. Ct. 1702, 1709 -1710 (2012) (citing *Milavetz, Gallop & Milavetz, P.A. v. United States,* 559 U.S. 229, 236, n.3, 130 S. Ct. 1324, 1332, n.3 (2010)) ("Petitioners also contend that legislative history supports their broad reading of 'individual.' But 'reliance on legislative history is unnecessary in light of the statute's unambiguous language.' "); *Harris v. Garner*, 216 F.3d 970, 976 (11th Cir. 2000) ("When the import of the words Congress has used is clear, as it is here, we need not resort to legislative history, and we certainly should not do so to undermine the plain meaning of the statutory language.")

But even if such history were considered, it would not help Defendants' cause. For example, the United States asserts that the following excerpt from an IGRA Senate Report confirms that Congress never intended for states to have a cause of action under § 1166:

> [T]he Committee has developed a framework for the regulation of gaming activities on Indian lands which provides that in the exercise of its sovereign rights, unless a tribe affirmatively elects to have State

11

> laws and State jurisdiction extend to tribal lands, the Congress will not
> unilaterally impose or allow State jurisdiction on Indian lands for the
> regulation of Indian gaming activities.

S. Rep. 100-446, at 6 (1988).  But saying there was no intent to extend "jurisdiction" or "state law" on Indian lands is irrelevant to this case.  Alabama is not here asserting *its* jurisdiction over illegal tribal gaming – it is not attempting to prosecute the Tribal Officials.  It is merely going to federal court *as a plaintiff* and asking the *court* to assume jurisdiction to enforce assimilated civil laws that undisputedly allow Alabama to seek an injunction of a public nuisance.  Such an outcome in no way interferes with any congressional intent to limit direct state jurisdiction over gaming on Indian lands.

### C.    Other sections of IGRA are irrelevant to the interpretation of § 1166.

It is clear that other provisions of IGRA, cited by the United States and the Tribal officials, which allow states and tribes to execute class III gaming compacts, are not relevant to this case.  The United States and the Tribal Officials suggest that because the parties could have agreed in such a compact to state jurisdiction to enjoin the illegal class III gaming which is the subject of the complaint, there is no need to interpret § 1166 to allow the current action.  This argument has no merit.

While it is true that IGRA permits some states and tribes to enter into compacts that may include agreements allowing a state to exercise regulatory authority on Indian lands, there is no basis whatsoever to believe that this opportunity to compact somehow overrides the clear language in § 1166 that limits the United States' exclusive jurisdiction to enforcement of assimilated criminal

12

laws.  The language in 25 U.S.C. § 2710(d)(3)(C) allows a state and a tribe to allocate their respective civil and criminal jurisdictions as the parties agree. Nothing in this provision even remotely suggests that this is a state's *only* means to affect the conduct of tribal gaming, as asserted by the Tribal Officials and the United States.

And, of course, no state can force a tribe to agree in a compact to the state's assertion of jurisdiction on Indian lands.  Given this reality, it makes perfect sense that Congress would include a provision like § 1166 that gives the state an ability – regardless of whether the tribe concurs – to protect its sovereign interests and its citizens from unlawful gaming that is not permitted by a gaming compact.

IGRA was not solely a vehicle to shield tribes from state regulation, as the Tribal Officials suggest.  If that were the case, there would have been no need to pass IGRA since the Supreme Court had made it clear in *California v. Cabazon Band of Mission Indians*, 480 U.S. 202, 207 (1987), that, as a matter of common law, states had little to say about gaming in Indian country.  Rather, IGRA was designed to strike a balance between tribal and state interests.

Section 1166 is a prime example.  This section does not give states "jurisdiction" on Indian lands.  It merely gives states a federal forum, as opposed to a state court, in which to seek a remedy for violation of its assimilated anti-gambling laws.  This scheme reasonably protects the interests of both states and tribes.

Furthermore, the suggestion that IGRA intentionally eviscerates state gambling law where tribes are concerned is belied by the foundational section of IGRA that sets out the three requirements that a tribe must satisfy before it can conduct class III gaming:

> (d) Class III gaming activities; authorization; revocation; Tribal-State compact.
>
> > (1) Class III gaming activities shall be lawful on Indian lands only if such activities are—
> >
> > > (A) authorized by an ordinance or resolution that—
> > >
> > > > (i) is adopted by the governing body of the Indian tribe having jurisdiction over such lands,
> > > >
> > > > (ii) meets the requirements of subsection (b), and
> > > >
> > > > (iii) is approved by the Chairman,
> > >
> > > (B) *located in a State that permits such gaming for any purpose by any person, organization, or entity,* and
> > >
> > > (C) conducted in conformance with a Tribal-State compact entered into by the Indian tribe and the State under paragraph (3) that is in effect.

25 U.S.C. § 2710 (emphasis added).  This section makes it clear that Congress intended states to have the ability to determine whether slot machines and other casino-type class III gaming, such as that described in the amended complaint, can be conducted by a tribe – even on Indian lands.  If a state does not permit such class III gaming for any purpose, no tribe can conduct it in that state either.  This is irrefutable evidence that Congress in no way intended IGRA to make states second-class citizens where tribal gaming is concerned.  Yet, even here, § 2710 invokes a balance between the interests of a state and a tribe, limiting a state's authority to

14

regulate tribal class III gaming on Indian lands *if* the state allows others to conduct such class III gaming for any purpose.

Section 1166 is perfectly consistent with this approach.  States are not foreclosed from seeking a remedy under IGRA for unlawful gaming, but they have to go to federal court (a neutral forum), and can only seek a civil remedy.  This scheme honors the interests and sovereignty of both tribes and states. It is unclear why the United States would have such strong concerns about a federal court considering whether a tribe or its officials have violated federally assimilated anti-gambling laws.

Finally, the Tribal Officials' vague suggestion that the lack of a remedy here is the fault of the State because it has not negotiated a compact with the Tribe, is both irrelevant and inaccurate.  As is apparent from § 2710(d), the State and Tribe *cannot even enter into a compact covering slot machines and other casino-type class III games* because the gaming would be patently unlawful in Alabama, which does not permit such gaming for any purpose.  While the State could pass a law permitting such class III gaming for some purpose, to do so merely to attempt to reach an agreement with the Tribe so it could assert state jurisdiction over tribal gaming that violates state law would be absurd.  Certainly Congress intended in a case where a compact cannot even be negotiated, that states would not have to rely on the federal government to enforce their anti-gambling laws when a tribe violates them and consequently, § 1166 as well.

15

## II.   Sovereign immunity does not bar this action.

### A.   *Ex parte Young* applies to claims seeking to enforce IGRA.

Alabama has asserted its public nuisance claims against tribal officials responsible for the Tribe's gaming operations at issue in this litigation.  Federal law is clear that such officials can be sued for prospective declaratory and injunctive relief under a doctrine that is similar to that established in the case of *Ex parte Young*, 209 U.S. 123 (1908).  The extension of this principle to tribal officials was probably first noted by the Supreme Court in *Oklahoma Tax Commission v. Citizen Band Potawatomi Indian Tribe*, 498 U.S. 505 (1991), a case where the Court refused to allow Oklahoma to sue a tribe because of its sovereign immunity, but based its decision in part on the Court's view that the State would have other remedies, including an *Ex parte Young*-type suit.  "We have never held that individual agents or officers of a tribe are not liable for damages in actions brought by the State.  See *Ex parte Young* . . . ." *Oklahoma*, 498 U.S. at 514.  As noted in Cohen's Handbook of Federal Indian Law, "When tribal officials act outside the bounds of their lawful authority, however, most courts would extend the doctrine of *Ex parte Young* (footnote omitted) to allow suits against the officials, at least for declaratory or injunctive relief."  Cohen's Handbook of Federal Indian Law § 7.05.  See also, *BNSF Ry. Co. v. Ray*, 297 F. App'x 675, 677 (9th Cir. 2008) ("Because Plaintiffs have alleged an ongoing violation of federal law – the unlawful exercise of tribal court jurisdiction – and seek prospective relief only, tribal sovereign immunity does not bar this action."); *Baker Elec. Co-op., Inc. v. Chaske*, 28 F.3d 1466, 1471 (8th Cir.

16

1994) ("The Tribe's sovereign immunity, however, is subject to the well-established exception described in *Ex parte Young*. . . ."); *Wisconsin v. Baker*, 698 F.2d 1323, 1333 (7th Cir. 1983), *cert. denied*, 463 U.S. 1207 (1983); *Tenneco Oil Co. v. Sac and Fox Tribe of Indians of Oklahoma*, 725 F.2d 572, 574 (10th Cir. 1984); *Comstock Oil & Gas Inc. v. Alabama and Coushatta Indian Tribes of Texas*, 261 F.3d 567, 570 (5th Cir. 2001).

Here, the parties do not dispute that class III gaming is prohibited under IGRA unless it is located within a state that permits such gaming and the tribe has entered into a tribal-state compact. Thus, it is clear that if the slot machines at issue in this case are class III games, as alleged in the amended complaint, such gaming is illegal under Alabama law. If that is the case, then the tribal officials named in Alabama's complaint have acted "outside the bounds of their lawful authority." *Id.* It could not be clearer that such actions subject these officials to an action such as that brought by Alabama for prospective declaratory and injunctive relief.

## B. *Ex parte Young* does not require a "discrete act."

The Tribal Officials and the United States argue that the *Ex parte Young* doctrine cannot apply absent allegations of a discrete action on behalf of tribal officials. According to them, lacking a discrete act by tribal officials, the claim is really one against the tribe. And since the tribe has immunity, it cannot be circumvented simply by naming tribal officials as defendants.

The Tribal Officials and the United States essentially attempt to establish a new requirement for pleading a case under the doctrine of *Ex parte Young*. This effort departs from the numerous decisions, including from the Supreme Court, recognizing the propriety of *Ex parte Young* actions against tribal officials where an ongoing violation of federal law and only prospective injunctive relief is sought, if the complaint alleges that the official sued "ha[s] some connection with the enforcement of the act . . ." or the conduct complained of. *Ex parte Young*, 209 U.S. at 157-158, and cases cited in Alabama's brief, pp. 16-20. Alabama's amended complaint clearly alleges that the defendant officials have a connection to the illegal gaming that is the subject of this litigation. These allegations satisfy any pleading requirements necessary to pursue an *Ex parte Young*-type claim.

**C.   The *Seminole Tribe* decision is limited to actions brought under 25 U.S.C. § 2710 and does not affect this action brought under § 1166.**

Finally, relying upon the holding in *Seminole Tribe v. Florida*, 517 U.S. 44 (1996), the United States suggests that the *Ex parte Young* doctrine does not apply to actions to enforce IGRA. In *Seminole Tribe* the Supreme Court held that an *Ex parte Young*-type claim was inappropriate, but only because Congress had established a complex remedial scheme unique to the specific provision of IGRA at issue in that case, i.e., § 2710(d)(3). *Id.* at 74. ("[W]here Congress has prescribed a detailed remedial scheme for the enforcement against a State of a statutorily created right, a court should hesitate before casting aside those limitations and permitting an action against a state officer based upon *Ex parte Young*.") This

narrow application of *Seminole Tribe* is widely recognized.  *Virginia Office for Protection and Advocacy v. Stewart*, 131 S. Ct. 1632, 1639 (2011) ("The reason we refused to permit suit to proceed in [*Seminole Tribe*] was that the Indian Gaming Regulatory Act created an alternative remedial scheme that would be undermined by permitting *Ex parte Young* suits"); *Diaz v. Michigan Dep't of Corrections*, 703 F.3d 956, 965 (6th Cir. 2013) (recognizing that *Seminole Tribe* was based upon the intricate remedial scheme related to equitable relief under § 2710(d)(3)); and *Pennsylvania Federation of Sportsmen's Clubs, Inc. v. Hess*, 297 F.3d 310, 331 (3d Cir. 2002) (same).

Under the provision of IGRA at issue in *Seminole Tribe,* a state has an obligation to negotiate tribal-state compacts in good faith.  Failure to do so triggers a complex remedial scheme.  This scheme subjects states to a court-ordered mediation process, § 2710(d)(7)(B)(iii), and the possibility that a tribal-state compact will be imposed upon the state by the Secretary of the Interior with input from the mediator.  § 2710(d)(8)(A).  This scheme, however, applies *only* to actions asserting violations of the specific section of IGRA (25 U.S.C. § 2710(d)(3)) that requires a state to negotiate in good faith for a compact when a tribe seeks such negotiations.  25 U.S.C. § 2710(d)(7)(B).  It does not apply to any other action brought under IGRA, and certainly does not apply to actions initiated under § 1166, which does not itself have a comparable remedial scheme, nor otherwise evinces any intent of Congress to prohibit the application of *Ex parte Young*.

If anything, the language of § 1166 suggests that tribal officials *are* subject to the enforcement of all assimilated laws:

> ***Whoever*** in Indian country is guilty of any act or omission involving gambling . . . which . . . would be punishable if committed or omitted within the jurisdiction of the State . . . shall be guilty of a like offense and subject to a like punishment.  [Emphasis added.]

*Whoever* is certainly broad enough to include tribal officials.  This remedial scheme is patently different than found in 25 U.S.C. § 2710(d)(7)(B) and thus, the reasoning of *Seminole* simply does not apply.  *Virginia Office for Protection and Advocacy*, 131 S. Ct. 1639 (2011); *Diaz*, 703 F.3d 956 (6th Cir. 2013) ("The FMLA's remedial provision simply states that an employer who violates the FMLA shall be liable for 'for such equitable relief as may be appropriate, including employment, reinstatement, and promotion.'  See 29 U.S.C. § 2617(a)(1)(B).  This language does not create intricate procedures like those that, in *Seminole Tribe*, prevented the Court from allowing a claim to proceed under *Ex parte Young*.")

## CONCLUSION

No one disputes that engaging in class III gaming without a tribal-state compact is illegal under IGRA.  Yet the Tribal Officials and the United States assert that Congress never intended states to be able to bring claims under 18 U.S.C. § 1166, effectively forcing states to rely on the United States to remedy such illegal gaming.  This result, however, conflicts with the plain language of § 1166.  Congress could not have been clearer that both state civil and criminal anti-gambling laws are assimilated into federal law, and that the federal government would have

20

exclusive jurisdiction over *only* criminal prosecutions.  Congress's intention in this regard should be honored.

Likewise, neither the Tribal Officials nor the United States have presented any compelling reasons why the *Ex parte Young* doctrine should not apply to the Tribal Officials under the facts of this case.  These efforts to invoke sovereign immunity should be rejected.

Michigan respectfully requests that Defendants' motion to dismiss be denied so that the issues raised in this action can be fully addressed and resolved.

Respectfully submitted,

Bill Schuette
Attorney General

John J. Bursch (P57679)
Solicitor General

Matthew Schneider (P62190)
Chief Legal Counsel

S. Peter Manning (P45719)
Division Chief

*/s/ Louis B. Reinwasser*
Louis B. Reinwasser (P37757)
Margaret A. Bettenhausen (P75046)
Assistant Attorneys General
Attorneys for Amicus
State of Michigan
Environment, Natural Resources, and
Agriculture Division
525 W. Ottawa Street
P.O. Box 30755
Lansing, MI  48909
Phone: (517) 373-7540
Fax:  (517) 373-1610
E-mail: reinwasserl@michigan.gov
              bettenhausenm@michigan.gov

Dated:  July 3, 2013

**CERTIFICATE OF SERVICE**

I hereby certify that on July 3, 2013, I electronically filed the foregoing

document with the Clerk of the Court using the ECF System, which will provide

electronic notice and copies of such filing to the parties listed below:

| | |
|---|---|
| Andrew L. Brasher<br>Henry Theodore Reagan, II<br>Office of the Attorney General<br>501 Washington Avenue<br>Montgomery, AL  36130<br>Attorneys for Plaintiff | Keith M. Harper<br>Mark H. Reeves<br>Kilpatrick Townsend & Stockton LLP<br>607  14th Street NW  Ste 90<br>Washington, DC  20005<br>Attorneys for Defendants |
| Kelly Fitzgerald Pate<br>Robin Garrett Laurie<br>Balch & Bingham LLP<br>105 Tallapoosa St Ste 200<br>P.O. Box 78<br>Montgomery, AL  36101-0078<br>Attorneys for Defendants | Meredith Flax<br>U.S. Department of Justice – ENRD/Law<br>& Policy Section<br>Robert F. Kennedy Bldg Room 2630<br>Ben Franklin Station<br>P.O. Box 7415<br>Washington, DC  20044<br>Attorney for Amicus |

                                        /s/ Louis B. Reinwasser
                                        Assistant Attorney General
                                        Attorney for Amicus State of Michigan
                                        Environment, Natural Resources, and
                                        Agriculture Division
                                        P.O. Box 30755
                                        Lansing, MI  48909
                                        Phone: (517) 373-7540
                                        Fax:  (517) 373-1610
                                        E-mail: reinwasserl@michigan.gov

Dated:  July 3, 2013